Eastman *v.* The State.

13,495.

## EASTMAN *v.* THE STATE.

MEDICINE AND SURGERY.— *Regulating Practice of.*— *Constitutional Law.*— *Police Power.*—The Legislature has power to regulate the practice of medicine and surgery, and to prescribe the qualifications of applicants for license.

SAME.—*License.*— *County Clerk.*—*Judicial Power.*—The power conferred upon the county clerk to accept or reject an application for license is not a judicial one.

SAME.—*Exceptions to Statute.*— *When will Not be Created.*—The courts can not create exceptions to a statute where its words are free from ambiguity and its purpose plain.

SAME.— *Wisdom of Statute.*—The wisdom or expediency of a statute is a question solely for the Legislature.

CRIMINAL LAW.—*Indictment.*---*Language of Statute.*—It is sufficient to charge an offence in the language of the statute.

From the Steuben Circuit Court.

*G. B. Adams,* for appellant.

*L. T. Michener,* Attorney General, and *W. B. Hord,* for the State.

ELLIOTT, C. J.—The appellant challenges the validity of the act regulating the practice of medicine and surgery, and on this challenge arises the principal question in the case.

The police power of a State is very broad and comprehensive. It has been variously defined by the courts and text-writers. It is, said one of the courts, "that inherent and plenary power in the State, which enables it to prohibit all things hurtful to the comfort, safety and welfare of society." *Lakeview* v. *Rose Hill Cemetery Co.,* 70 Ill. 191 (22 Am. R. 71). "All laws," says another court, "for the protection of the lives, limbs, health and quiet of persons, and the security of all property within the State, fall within this general power of the government." *State* v. *Noyes,* 47 Maine, 189.

In *Thorpe* v. *Rutland, etc., R. R. Co.,* 27 Vt. 140, it was held, that, under the general police power of the State, "persons and property are subjected to all kinds of restraints and burdens, in

order to secure the general comfort, health, and prosperity of the State, of the perfect right in the Legislature to do which no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned."

In speaking of this power, it was said by this court, in *Hockett* v. *State*, 105 Ind. 250 (55 Am. R. 201), that "It extends to the protection of the lives, limbs, health, comfort and convenience, as well as the prosperity, of all persons within the State. It authorizes the Legislature to prescribe the mode and manner in which every one may so use his own as not to injure another, and to do whatever is necessary to promote the public welfare, not inconsistent with its own organic law."

The views expressed in these cases are well supported by authority. *Western Union Tel. Co.* v. *Pendleton*, 95 Ind. 12 (48 Am. R. 692); Cooley Const. Lim. 572; *Barbier* v. *Connolly*, 113 U. S. 27; *Soon Hing* v. *Crowley*, 113 U. S. 703; *Live Stock Ass'n* v. *Crescent City*, 1 Abbott U. S. Rep. 388; *Slaughter-House Cases*, 16 Wall. 36.

The practice of medicine and surgery is a vocation that very nearly concerns the comfort, health and life of every person in the land. Physicians and surgeons have committed to their care the most important interests, and it is an almost imperious necessity that only persons possessing skill and knowledge should be permitted to practice medicine and surgery. For centuries the law has required physicians to possess and exercise skill and learning, for it has mulcted in damages those who pretend to be physicians and surgeons, but have neither learning nor skill. It is, therefore, no new principle of law that is asserted by our statute; but, if it were, it would not condemn the statute, for the statute is an exercise of the police power inherent in the State. It is, no one can doubt, of high importance to the community that health, limb and life should not be left to the treatment of ignorant pretenders and charlatans. It is within the power

of the Legislature to enact such laws as will protect the people from ignorant pretenders, and secure them the services of reputable, skilled, and learned men, although it is not within the power of the Legislature to discriminate in favor of any particular school of medicine.   When intelligent and educated men differ in their theories, the Legislature has no power to condemn the one or approve the other, but it may require learning and skill in the school of medicine which the physician professes to practice.   *White* v. *Carroll*, 42 N. Y. 161 (1 Am. R. 503).

The rule requiring physicians to possess learning and skill is a very ancient one.   *Bonham's Case*, 8 Coke R. 227 ; *College of Physicians* v. *Levett*, 1 Ld. Raym. 472.   This rule of the common law has been incorporated in many of the State statutes, and these statutes have always been upheld.

The statute of Minnesota is very similar to ours, and it was held to be valid in *State* v. *State Med. Ex. Board*, 32 Minn. 324 (50 Am. R. 575), the court saying: "In the profession of medicine, as in that of the law, so great is the necessity for special qualification in the practitioner, and so injurious the consequences likely to result from the want of it, that the power of the Legislature to prescribe such reasonable conditions as are calculated to exclude from the profession those who are unfitted to discharge its duties, can not be doubted."

Speaking of a statute like ours, another court said: "We are of opinion that all of the provisions of the act under consideration, as above set out, and independent of any constitutional warrant for its enactment, would be maintainable under the police power of the State; that, under this general power, the Legislature is the proper judge as to what regulations are demanded in dealing with the property and restraining the actions of individuals." *Logan* v. *State*, 5 Texas App. 306.

The subject was examined in all its important phases in *Ex Parte Spinney*, 10 Nev. 323, and the statute declared valid.

A like result was reached by the court in *Hewitt* v. *Charier*, 16 Pick. 353. A full discussion of the question will be found in *Fox* v. *Washington Territory*, 5 West Coast Rep. 339, where a similar result was reached. Judge Cooley strongly and unequivocally affirms the validity of statutes like ours. Cooley Torts, 289, 290. The question received a very careful consideration in *State* v. *Dent*, 25 W. Va. 1, and it was held that the statute was valid in every part.

For more than eighty years a similar statute has been in force in New York, and the courts of that State have uniformly regarded it as valid. *Sheldon* v. *Clark*, 1 Johns. 513 ; *Allcott* v. *Barber*, 1 Wend. 526 ; *Timmerman* v. *Morrison*, 14 Johns. 369 ; *Thompson* v. *Staats*, 15 Wend. 395 ; *Bailey* v. *Mogg*, 4 Denio, 60 ; *Finch* v. *Gridley*, 25 Wend. 469. In very many other cases such statutes have been enforced. *Antle* v. *State*, 6 Texas App. 202 ; *Musser* v. *Chase*, 29 Ohio St. 577 ; *Wert* v. *Clutter*, 37 Ohio St. 347 ; *Bibber* v. *Simpson*, 59 Maine, 181 ; *Thompson* v. *Hazen*, 25 Maine, 104 ; *State* v. *Gregory*, 83 Mo. 123 (53 Am. R. 565).

The appellant is right in asserting that the departments of the government are separate and distinct, and that a clerk of a county can not exercise judicial powers. *Smith* v. *Myers*, *ante*, p. 1, and cases cited. But he is wrong in affirming that the act under examination confers upon the clerk judicial powers.

The power to accept or reject an application for license, under the statute, is not a judicial one, although it may involve some exercise of discretion. *Elmore* v. *Overton*, 104 Ind. 548 (54 Am. R. 343) ; Cooley Torts, 411.

If an exercise of discretion constituted a clerk a judicial officer, then he would be such in every case in which he issues a writ, files a paper or approves a bond, for all these acts involve some exercise of discretionary power. The statute does not require the clerk to sit in judgment upon the sufficiency of the application for a license, for the affidavits prescribed and the diploma required constitute the evi-

dence upon which the clerk must act. The diploma and affi-
davits compel him to grant the license, and it is, therefore,
not possible to regard his duty as a judicial one. *Flournoy*
v. *City of Jeffersonville*, 17 Ind. 169; *Betts* v. *Dimon*, 3 Conn.
107; *State, ex rel.*, v. *Doyle*, 40 Wis. 175.

Whether the statute is a wise one or not is purely a legis-
lative question, and so is the question whether it is reasonable
or unreasonable. This doctrine was thus expressed in *Hed-
derich* v. *State*, 101 Ind. 564 (51 Am. R. 768): "Whether
a statute is or is not a reasonable one, is a legislative, and not
a judicial question. Whether a statute does, or does not,
unjustly deprive the citizen of natural rights, is a question
for the Legislature, and not for the courts. There is no cer-
tain standard for determining what are, or are not, the
natural rights of the citizen. The Legislature is just as
capable of determining the question as the courts. Men's
opinions as to what constitute natural rights greatly differ,
and if courts should assume the function of revising the acts
of the Legislature on the ground that they invaded natural
rights, a conflict would arise which could never end, for there
is no standard by which the question could be finally
determined."

Judge Cooley says: "Nor can a court declare a statute un-
constitutional and void, solely on the ground of unjust and
oppressive provisions, or because it is supposed to violate the
natural, social, or political rights of the citizen, unless it can
be shown that such injustice is prohibited or such rights guar-
anteed or protected by the Constitution." Cooley Const.
Lim. (5th ed.) 197. At another place this author says: "The
judiciary can only arrest the execution of a statute when it
conflicts with the Constitution. It can not run a race of
opinions upon points of right, reason, and expediency with
the law-making power." *Ibid.* 201.

The offence is charged in the language of the statute, and
this is sufficient. *State* v. *Miller*, 98 Ind. 70, and cases cited;

Eastman v. The State.

*Graeter* v. *State*, 105 Ind. 271 ; *Antle* v. *State*, 6 Texas App. 202.

In discussing the evidence, counsel assert that as the terms of the statute are broad and sweeping, courts must create exceptions in order to give it a just and reasonable effect. There are, perhaps, extreme cases where exceptions may be created by the courts, but these cases are very rare, and the authority to create exceptions is one to be exercised with great delicacy. It can never be exercised where the words of the statute are free from ambiguity and its purpose plain. It is only where the necessity is imperious, and where absurd or manifestly unjust consequences would otherwise certainly result, that the courts can create exceptions. This is not such a case. It is the purpose of the statute to prevent persons who do not possess the necessary qualifications to practice medicine or surgery, from inflicting injury upon the citizens by undertaking to treat diseases, wounds and injuries. It is the plain intention of the statute to keep out of the professions of medicine and surgery all who do not possess learning and skill sufficient to enable them to properly discharge the duties incumbent upon members of those honorable professions, and courts have no right to create an exception which will defeat that intention.

It is immaterial whether the person who undertakes to treat diseases or wounds does it for hire or not, for unless he is qualified as the statute requires, he must not undertake the treatment of diseases or wounds at all. The courts can not divide professional persons into classes, and assert that one class is within the law and the other not, for the law applies to all who assume the responsible duty of treating the sick, wounded or injured citizens, as well those who expect compensation for their services, as those who do not. The great object of the law is to allow none but skilled and learned persons to attempt to exercise functions and duties which require knowledge and skill, and it is not material whether re-

ward is paid or promised, or the services are rendered without compensation or the promise of it.

The State has an interest in the life and health of all its citizens, and the law under examination was framed, not to bestow favors upon a particular profession, but to discharge one of the highest duties of a State, that of protecting its citizens from injury and harm.

It has been for ages a ruling principle of jurisprudence, "that regard for the public welfare is the highest law," and that principle is here of controlling force, for few things, if indeed any, are more important than that the health, limbs and lives of the citizens should not be entrusted to the care of persons who lack the knowledge and skill requisite to enable them to render proper medical and surgical treatment to the citizens afflicted by disease, wounds or injuries.

Judgment affirmed.

Filed Jan. 25, 1887.