**W. G. LEWIS, Appellant,**

v.

**KENTUCKY STATE BOARD OF DENTAL EXAMINERS, Appellee.**

Court of Appeals of Kentucky.

March 22, 1957.

---

Ben B. Fowler, Frankfort, for appellant.

E. C. Hume, Jr., Louisville, Clark Pratt, Hindman, for appellee.

STANLEY, Commissioner.

The judgment enjoins the appellant, W. G. Lewis, "from practicing dentistry and operating a dental clinic" since he has no license to do so. The conditions are unique. A fair and complete statement of the facts is contained in the appellant's brief as follows:

"W. G. Lewis is a man seventy years of age. He is well educated, holding a degree in Pedagogy from Michigan State Normal College, a Bachelor's Degree from Columbia University, and an M.A. Degree from Chi-cago University. He has had an interest and connection with Christian Foreign Missions since childhood. Beginning in 1936 he has devoted the major portion of his income and time to foreign mission work. In the past he has engaged in business in Lincoln, Nebraska. After he decided to devote his time to foreign missions he acquired training as a practical dentist and traveled throughout the world providing dental service in many mission fields. Later he was instrumental in forming a nonprofit organization known as Missionary Supporters, Inc., an organization whose purpose is to lend aid to his work in providing dental service to foreign missions. This organization is supported by contributions from all over the country of people who are interested in training missionaries for foreign fields. With the backing of this organization the appellant's purpose is to train students in practical dentistry so that they might go into the many foreign mission fields and provide dental service as a part of the mission program. In order to secure patients for the purpose of providing training in practical dentistry it was necessary to locate in a community where dental service was needed but not available. The appellant learned of the lack of dental service in Eastern Kentucky and in October of 1954 located at Cody in Knott County. His students gathered there from many places, several came to the clinic from foreign mission fields and one was a graduate doctor who wanted to add practical dentistry to his other skills.

"The appellant's method of training is to lecture and demonstrate, and begin by taking a few patients who are given dental service under his close supervision. After the students have progressed, a greater number of patients are served and thus the students obtain dental skill by actual practice. The attempt is to perform and acquire proficiency in simple dental operations. Novocain and antibiotics are used. On many occasions the appellant has advised patients to acquire the services of licensed dentists for more specialized work. Mis-

sionary Supporters, Inc., has provided for the clinic a complete line of dental equipment so that the instruction can be complete and the service adequate.

"The appellant and his trainees make no pretense that they are licensed dentists or that he or they hold any formal degrees in dentistry. The appellant does not use in any manner the title of 'Doctor' making it clear that his only title is 'Mister.' The trainees upon graduation are not given a degree but merely a personal certificate from the appellant. The trainees do not intend to practice dentistry but only to use their practical training as a service in foreign missions.

"The training school has become known as the Cody Free Dental Clinic. The patients are not charged any fee, and are told that no fee or any contribution is expected. Small contributions are accepted but all are admitted without any regard or reference to contributions. The voluntary contributions sometimes take the form of garden stuff, eggs and the like, which helps to supply the students with food. However, this does not support them as their major support comes from their own mission or from Missionary Supporters, Inc.

"The record shows that the United States Department of Health estimates that one dentist can properly care for only 384 persons in a year. Knott County has a population of approximately 20,000 persons, thus it would require at least fifty (50) dentists to adequately serve the county. There is no dentist practicing in Knott County, although a dentist comes into the county two (2) days each week.

"The free clinic actually performed dental service, filling cavities, extraction and some plates, for 1,500 persons during its operation, and when it was closed by the injunction issued by the Special Judge there were several thousand on the waiting list. This service has been performed free and without any hope or expectation of financial reward, and has been performed without the slightest damage or injury to any patient. The service to the patients is incidental to the major purpose of training practical missionary dentists, but it has in fact helped to alleviate a desperate need for dental service in several mountain counties. The service is not in competition with licensed commercial dentists because the need is so great and the supply so inadequate that hundreds of additional dentists would be necessary in this section of Kentucky to properly care for the existing need."

We have a comprehensive code regulating the practice of dentistry. Chapter 313, Ky.Rev.Statutes. KRS 313.010(2) reads: "Any person shall be regarded as 'practicing dentistry' who, for a fee, salary or other reward paid or to be paid to himself, performs or advertises to perform, dental operations of any kind, or who diagnoses or treats diseases or lesions of human teeth or jaws," etc. The rest of the section lists certain activities as constituting the practice of dentistry. It seems that while most of the operations at the "clinic" are by persons in training, yet the appellant is personally conducting the place, teaching and directing the students in their professional services and operations. We think it clear—indeed, it is not otherwise contended—that the appellant's activities come within the term "practicing dentistry."

The appellant contends that the quoted initial clause of KRS 313.010(2) modifies and confines the application of the statutes to commercial activities and practices, and that his training of foreign missionaries and their charitable services are not within the terms of the law which require a license. The argument runs that the purpose of the regulation is to prevent quacks from imposing upon the public by masquerading as dentists and other persons from engaging in the described activities for benefit or personal gain. The appellant insists that he does not pose as a dentist and that his high purposes and services, freely rendered without compensation or reward and meeting a

great need, do not bring him within the intent and scope of the law.

We do not think that the initial clause of KRS 313.010(2) declaring that "any person shall be regarded as 'practicing dentistry' who, for" compensation does the things enumerated should be construed in isolation from all other provisions of the code of dentistry. KRS 313.020 is explicit and positive, namely, "No person, except those licensed and registered under prior laws of this state, shall practice or attempt to practice dentistry unless he has been licensed by the board and has registered his license as provided in KRS 313.110." And the Kentucky State Board of Dental Examiners is expressly authorized to "maintain an action in equity to enjoin the practice of or attempt to practice dentistry without a license in violation of KRS 313.020."

█ █ Nor can we accept the appellant's proposition that the statutes are only aimed at masqueraders and quacks who prey upon the public for compensation. That is undoubtedly a purpose but the compensation provision is a subordinate or secondary consideration. To safeguard public health and welfare is the primary purpose of restricting and regulating the practice of dentistry and like professions. This exercise of police power is clearly justified by the fact that the practice requires special knowledge, training, skill and care. Nugent v. Stokes, 313 Ky. 131, 230 S.W.2d 609; Reynolds v. Walz, 278 Ky. 309, 128 S.W.2d 734. It is immaterial (unless a particular statute provides otherwise) that the treatment is gratuitous, or that the practitioner does not assume to be a physician or dentist. 41 Am. Jur., Physicians and Surgeons, § 24. The object of the law is to allow none but persons who are specially skilled and learned to exercise the functions of or to practice a profession which requires special skill and knowledge. The courts cannot divide professional persons into classes upon a finan-

cial basis and hold that one class is outside the regulatory law because its members, whether qualified or unqualified, pursue a course of practice without compensation or the promise of it. Eastman v. State, 109 Ind. 278, 10 N.E. 97, 58 Am.Rep. 400.

█ The appellant submits that the result of the judgment is detrimental rather than beneficial to the public welfare. Therefore, it is argued that the court in the exercise of its equitable powers should not prohibit the operation of the free clinic and the practice of dentistry where there is such great need and no hurt, but good, to the public has been shown. Furthermore, dentists licensed by the Board have not furnished necessary dental services to the people of Knott and adjoining counties.

Doubtless, under the circumstances of the present case the good outweighs the bad. A person in Knott County suffering from a toothache is relieved by having the tooth pulled or pain eased, even by a practical novice, properly equipped, although not licensed; and we doubt that an African aborigine who may be served in the future by these students would care whether they or their instructor had been licensed or not. But the appellant's laudable purposes and his charitable and helpful services do not justify by-passing the sanction of the Kentucky Board of Dentistry of his or their activities in this state. The appellant's practice is clearly within the terms of the statute. Those terms are mandatory, and the court may not write into them an exception or exemption. We must recognize the ancient maxim that "equity follows the law" and that the appellant has collided with the law.

It seems to us, therefore, the judgment is proper. It is accordingly

Affirmed.

BIRD, J., dissenting.