ROBERT A. PFLUGER, D.D.S., *et al.*, Plaintiffs-Appellants, *v.* SUNDSTRAND CORPORATION, Defendant-Appellee.

Second District   No. 79-242

Opinion filed May 15, 1980.

Kenneth Hyzer, of Rockford, for appellants.

Thomas, Thomas & Keeling, of Rockford, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Robert A. Pfluger, a dentist, and Daniel P. Person, a former employee of Sundstrand Corporation, brought a declaratory judgment action against Sundstrand to recover certain dental fees which Sundstrand refused to pay under its health plan. Pfluger was dismissed out at the pleading stage, and the trial court granted a motion to dismiss as to Person's case at the close of his evidence.

Sundstrand's health plan is a private plan which is self-insured. In connection with certain dental work Sundstrand requires periapical X rays (full mouth) to be taken as a precondition of payment under the plan. Dr. Pfluger refused to take and submit such X rays, and Sundstrand refused to pay Person's dental bill.

In this appeal, Dr. Pfluger contends that it was error to dismiss him as a party plaintiff at the pleading stage as he came within the meaning of "interested party" as stated in section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.1) relating to declaratory judgments and that there was an actual controversy between him and Sundstrand Corporation, thus giving him standing. It is our opinion, however, that Dr. Pfluger has misconstrued the statute and we do not consider him to be an "interested party" under the facts of this case. Pfluger argues that he is an "interested party" to the controversy between Person and Sundstrand because "Dr. Pfluger's relationship with his patient is affected by the position taken by Sundstrand and his ability to continue to perform services for other patients employed by Sundstrand *and to be paid for such services* is jeopardized." (Emphasis added.) Dr. Pfluger does not contend that he has any contract with Sundstrand or that its health plan is in any way a contract for his benefit as a third-party beneficiary. What he obviously means is simply that the source from which he receives payment for dental work on Sundstrand employees may be cut off if Sundstrand enforces its rule requiring periapical X rays.

In our opinion, Dr. Pfluger's concern about the source of his fees does

not make him a person interested in the controversy between Person and Sundstrand within the intent of the declaratory judgment statute. Dr. Pfluger did not perform the dental work for Sundstrand but for Person's wife—it was a personal contract and a personal obligation between Person and Pfluger. Pfluger's interest in the Sundstrand health plan is likewise personal to him. Although Sundstrand may, for the sake of convenience, make a direct payment to a doctor or dentist to whom benefits have been assigned, this does not affect Person's obligation to Pfluger or make Sundstrand a party to the contract between them.

■■ Thus, we see no reason to regard Dr. Pfluger as being a person "interested" in the controversy between Person and Sundstrand. As stated in the recent case of *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 376:

> "The word, 'interested' does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right which is capable of being affected."

Under the facts of this case we see no "personal claim, status, or right" on Dr. Pfluger's part which is capable of being affected by the controversy between Person and Sundstrand since Sundstrand has no obligation to Pfluger and there is no relationship between them arising out of Person's being both an employee of Sundstrand and a patient of Pfluger. It does not seem to us that this relationship gives Pfluger either a "personal claim"—since he has no relationship—a "status"—since he is not an employee—nor a "right"—since he has no contract with Sundstrand. He, therefore, is not a person "interested" in the controversy within the intent of the statute. We think the trial court was correct in dismissing Pfluger at the pleading stage as not having standing to sue in declaratory judgment.

Person, whose case was dismissed on defendant's motion at the close of his evidence, raises four points in his appeal: (1) that Sundstrand's requirement that X rays be furnished before certain claims will be considered violates the public policy of Illinois; (2) that the requirement that X rays be furnished infringes on the professional relationship between a dentist and his patient and violates section 5 of "An Act to regulate the practice of dental surgery and dentistry in the State of Illinois, and to repeal certain acts therein named" (Ill. Rev. Stat. 1977, ch. 111, par. 2217), since it constitutes the practice of dentistry by a corporation; (3) the requirement as to X rays violates the contract rights of Person under his contract with Sundstrand since the Sundstrand health plan does not contain such mandatory requirement, and (4) the court's ruling granting the motion to dismiss was contrary to the weight of the evidence.

■■■ The theory of Person's first contention is based on the public policy

section (section 2) of the Radiation Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 212) which reads as follows:

"Whereas ionizing radiations and their sources can be instrumental in the improvement of the health and welfare of the public if properly utilized, and may be destructive or detrimental to life or health if carelessly or excessively employed or may detrimentally affect the environment of the State if improperly utilized, it is hereby declared to be the public policy of this State to encourage the constructive uses of radiation and to prohibit and prevent exposure to ionizing radiation in amounts which are or may be detrimental to health. * * * ."

It is obvious that the quoted language does not prohibit the use of X rays but merely states it is the public policy of Illinois "to prohibit and prevent exposure to ionizing radiation in amounts which are or may be detrimental to health." Person's argument that the requirement that X rays be submitted *per se* violates the public policy of this State as set out in section 2 of the Radiation Protection Act is far too sweeping. It is clear that the language of section 2 is designed to voice a note of caution as to the use of X rays generally, while at the same time approving their "constructive uses." Whether periapical X rays were actually necessary in this particular case for proper diagnosis may be debatable among dentists but all that the State condemns is the use of X rays done "carelessly" or "excessively." There is no showing that Sundstrand's policy of requiring periapical X rays in certain types of problems necessarily encourages excessive or careless use of X rays. An exhibit introduced by the plaintiff taken from the manual of the Illinois Dental Society indicates that the requirement of "mandatory submission of radiographs in every instance" is not recommended by the society for a plan offered to the public for group purchase of dental care. However, this is for a plan offered to the public generally and whether the rejections of mass X rays on an indiscriminate basis is based on economic, administrative or health grounds, the guidelines indicated are not necessarily relevant to the Sundstrand health plan. That plan embraces only a restricted group—its own employees—and both because it is free and self-insured and because of the special relationship between employer and employee a more careful approach under their plan may be justified. We do not consider the plaintiff's argument based on the guidelines suggested for plans for group purchase of dental care offered to the public generally to be relevant here. Moreover, the Illinois Dental Society guidelines state that "third parties"—that is, we assume, other parties than the patient or the dentist "may make reasonable requests for radiographs." What is reasonable in the context of a plan for group purchase of dental care does not necessarily set the standard of reasonableness for the special

conditions of Sundstrand's employee health plan. We do not regard the Illinois Dental Society's guidelines as setting the public policy of Illinois, which is delimited by the Radiation Protection Act. Thus, if Sundstrand's requests for X rays were reasonable considering their limitations, nature and purpose in the light of the Sundstrand plan's needs and objectives, it does not appear to us that the public policy of Illinois was violated. We reject this argument.

■ The contention that the Sundstrand plan requirement that X rays be submitted in certain instances infringes on the relationship between dentist and patient and amounts to the practice of dentistry by a corporation does not require any extended comment. Sundstrand provided a health plan to its employees, which involved dental care. The requirements of the plan, including the submission of X rays, relates only to qualification for payment for services rendered by the chosen dentist of the employee. Sundstrand by its plan makes no attempt to control, limit or direct the dental care needed by the employee, but in certain cases requires proof of its need by way of X rays. The thrust of the requirement is clearly toward establishing a condition which is compensable under the plan—how the condition is remedied or whether it is remedied at all is clearly up to the dentist and the patient. We see no infringement on the professional relationship between patient and dentist in the Sundstrand health plan requirement.

■ There is also an argument made to the effect that Sundstrand is a corporation in some manner or other practicing dentistry by requiring X rays and diagnosing the conditions revealed thereby in evaluating claims. Again, the X ray requirement is aimed at establishing the necessary proof for payment of a claim—it has no professional implications. The employees are not told they should or should not have an X ray taken—it is a qualification for payment by Sundstrand under its health plan that X rays be submitted in certain instances, but the requirement is aimed at payment, not at treatment. The argument that Sundstrand by refusing to pay a claim without X-ray proof of its necessity is somehow practicing dentistry we find to be quite unpersuasive. The plaintiff cites *People ex rel. Illinois Society of Orthodontists v. United States Dental Institute, Inc.*, (1978), 57 Ill. App. 3d 1029, but we find that case distinguishable from the case before us. Sundstrand is using professional dentists to evaluate the need for dental work performed or proposed to be performed by the employee's own dentist. It is clear that in so doing Sundstrand is merely corroborating the claim presented so as to know whether or not payment of the cost thereof should be made. Its purpose is not to practice dentistry but to verify claims. On the other hand, in the *Illinois Society of Orthodontists* case, the primary purpose of the Institute was to make diagnosis and give advice as to the treatment of the dentist's patients on a

continuing and supervising basis—their actions were oriented toward diagnosis and giving future treatment, whereas the Sundstrand plan is oriented towards verification of the treatment needed as an insurance coverage question. The cases are thus quite different.

The further contention is made that the written plan itself did not set out a mandatory requirement for the taking of an X ray under the facts of this case, therefore the imposition of such a requirement violated the contractual rights of the employees. We think this argument is farfetched. Sundstrand extends certain benefits to its employees and in some cases requires certain procedures to be followed in order to collect benefits. The actual paragraph complained of in the written health plan of Sundstrand is as follows:

> "17.9 *Proof of Occurrence.* The Company reserves the right at its discretion to accept, or to require verification of any alleged fact or assertion pertaining to any claim for dental expense benefits. As part of the basis for determining benefits payable, the Company may require X rays and other appropriate diagnostic and evaluation materials."

The plaintiff conceives of this language as requiring Sundstrand to make a positive showing that it considered each case coming within a certain category of problems individually and made a decision on such individual case as to whether it would or would not require X rays to be furnished in that case. The quoted language only indicates, however, that Sundstrand reserves the *right* to require X rays as part of its verification process in determining what benefits are payable. There is no limitation in the written plan except Sundstrand's good judgment as to what types of cases will require such verification. Pursuant to this general language in the plan the "Group Insurance Administration" sent out a letter to all dentists specifically requiring X rays to be submitted for "gold restorations, crown or bridge work"—which included the dental work to be performed for Mrs. Person in this case. Obviously, Sundstrand did exercise its judgment as to which category of cases required X-ray verification, since only specific types of treatment are mentioned in the letter. Such a decision is clearly within the general discretion of the company as set out in paragraph 17.9 of the plan as quoted above. Apparently, the word "discretion" is injected into the argument by the plaintiff with the thought of imposing the judicial concept of discretion applicable to a trial judge on Sundstrand. However, no such standard is applicable here—Sundstrand merely gave notice in its written plan that it might, in certain cases, require X rays to be submitted. Later, it notified dentists specifically that "gold restorations, crowns or bridge work" would require such verification. To say that Sundstrand violated the "contract" by deciding to require X rays for gold restorations, crowns and

bridge work generally is to read a judicial construction into the word "may" which was entirely unwarranted. The quoted language does not require evidence of case-by-case analysis which would be awkward to administer. We see no foundation whatever for this argument.

Lastly, Person argues that the evidence at the close of the plaintiff's case favored the plaintiff and the trial court erred in giving judgment for the defendant. Person speaks of "evidence," but as we view it the "evidence" he speaks of was mainly conclusions of law rather than facts. The plaintiff submitted the testimony of certain dentists who testified to the effect that they themselves did not require X rays in all cases within the category of the dental problems where Sundstrand required them and that they avoided excessive radiation as being dangerous. Dr. Lund, testifying for the plaintiff, expressed the opinion that the taking of X rays in determining the necessity for a crown constituted an unreasonable risk of radiation to the patient, and he expressed a legal opinion that Sundstrand, by requiring such X rays, was engaging in the practice of dentistry. However, Dr. Lund admitted that in order to get a claim approved by Sundstrand he had taken and submitted an X ray as requested. Dr. Castrogiovanni testified he routinely took X rays of the mouths of new patients, that it was his practice to take X rays of old patients every four years and that he routinely took X rays of patients who were Sundstrand employees and needed crowns or bridge work as required by Sundstrand. Thus, while these dentists indicated that the requirement that X rays be submitted for all gold restorations, crowns or bridge work was not always necessary or even the most useful diagnostic procedure, they obviously did not reject the use of X rays absolutely as a matter of policy but used them as their professional judgment or economic advantage might dictate.

The plaintiff, in contending that the weight of the evidence was on his side and therefore the trial court erred in granting the defendant's motion to dismiss, cites section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 64(3)), which states in part as follows:

> "In ruling on the motion the court shall weigh the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered."

The plaintiff offered evidence on two points: (1) whether the X rays were necessary for diagnosing the problems for which they were required and (2) whether the automatic requirement for them was against public policy.

While the testimony of the plaintiff's experts was to the effect that for crown work, at least—the work involved in this case—X rays were not ordinarily necessary, it was conceded by them that X rays were of some benefit in many such cases. This is a matter of opinion among dentists as

to actual practice, but this opinion seems irrelevant in this case because the Sundstrand requirement was related to the administration of their own group dental plan, not to the everyday practice of an individual dentist. Since Sundstrand conceived of its dental plan as requiring X rays in certain cases for administrative purposes and since it was offering the plan as a company benefit, whether X rays were always necessary in actual practice is immaterial—the requirement was in the nature of a condition precedent and the opinion of the testifying dentists as to its necessity in their own practice is not relevant evidence as to the validity of Sundstrand's requirement.

As to the question of public policy, we see nothing in the experts' testimony or in the guidelines of the Illinois Dental Society which indicates the Sundstrand plan violates public policy. The Illinois Dental Society does not establish the public policy of Illinois, which is set by the Radiation Protection Act. In any event, their guidelines for setting up a prepaid group dental plan are not germane to the Sundstrand voluntary uninsured plan for its own employees. Whatever the Illinois Dental Society's guidelines established, it did not establish that the Sundstrand health plan in requiring certain X rays for its own purposes violated public policy.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

WOODWARD and VAN DEUSEN, JJ., concur.