2022 IL App (2d) 210541
No. 2-21-0541
Opinion filed December 27, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CM-1848 |
| JAMES V. D'ALISE, | ) ) ) | Honorable Monique N. O'Toole, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    This case presents a question on how restitution is ordered and paid. Following a bench

trial, defendant, James V. D'Alise, was convicted of seven counts (counts I and IV through IX) of

the unlicensed practice of dentistry (225 ILCS 25/37(1), (2), (4) (West 2018)). He was sentenced

to 270 days in jail on count I and 2 years of conditional discharge on the remaining counts. The

trial court also ordered him to pay restitution totaling $14,163.80. He moved the trial court to

reconsider, arguing, among other things, that the restitution order was improper. The court denied

that motion, and this timely appeal followed. Defendant argues that the restitution order is

improper because (1) the costs the victims incurred were not the result of defendant's criminal

conduct, (2) the trial court did not expressly find that defendant was able to pay restitution, and

(3) even if no such express finding was required, the case must be remanded for the court to specify the time frame within which defendant must pay all restitution. Defendant also claims that, to the extent he forfeited these issues by failing to raise them in the trial court, we can consider them under the plain-error rule or because trial counsel was ineffective for failing to raise the issues. We affirm, but we remand for the limited purpose of allowing the trial court to set the time frame within which defendant must pay all restitution.

¶ 2                                    I. BACKGROUND

¶ 3       On August 16, 2019, defendant was arrested for the unlicensed practice of dentistry. On that same date, he posted a cash bond of $1500. Defendant retained private counsel, who filed an appearance on September 24, 2019. On September 27, 2019, the trial court allowed defendant to travel to Florida for several days. On December 17, 2019, the court allowed defendant to relocate to Texas while the case was pending. Thereafter, the defendant appeared in person or over Zoom when the court required his presence. In January 2020, defendant relocated to New Mexico, apparently without seeking court permission.

¶ 4       Defendant's trial began on May 24, 2021. Defendant testified that he graduated from dental school in 1968. He owned a specialty dentistry practice, A Center for Dental Implants (ACDI), from 2005 to July 2018. The implants ACDI used were manufactured in New Mexico by a company owned by defendant's brother. In January 2020, defendant, then age 78 and largely retired, moved to New Mexico to work as a consultant for his family's manufacturing company.

¶ 5       For 40 years, defendant worked as a dentist, but on July 31, 2018, his dental license was revoked. After July 31, 2018, defendant remained the majority owner of ACDI and continued to work there as the office manager, hiring dentists to treat patients. Sarah Rigdon and James Wadas were two such patients.

¶ 6      Rigdon's and Wadas's experiences with defendant and ACDI were detailed both at trial and at the restitution hearing. Rigdon, age 79 at trial, had known defendant since 2006 when she visited ACDI for an evaluation with defendant about possible implants. Subsequently, defendant personally installed implants for Rigdon. In July 2018, Rigdon's bone structure started to break down, which caused her implants to loosen. Defendant proposed a treatment plan to address Rigdon's problem. The plan involved several meetings between defendant and Rigdon, some of which occurred after July 2018. The plan—finalized in October or November 2018—was "to take out old dental work and put in some new dental work, along with bone grafting."

¶ 7      Dr. Becker, a dentist employed by ACDI, performed the work on Rigdon. In January 2019, Dr. Becker installed temporary implants. When Rigdon returned for follow-up treatment, Dr. Becker, who could not easily remove the temporary implants, spent two hours hammering and breaking them before gluing the pieces together and putting them back in Rigdon's mouth. Rigdon testified that, after this procedure, the implants were ill-fitting and uncomfortable.

¶ 8      At Rigdon's next appointment, Dr. Thomas Faucher, another dentist employed by ACDI, told Rigdon that she needed a sinus lift but that such a procedure was beyond his expertise. Rigdon, who lived in Wisconsin, obtained from Dr. Faucher a referral to a Wisconsin dentist who could perform the procedure. After Rigdon's first visit to the referral dentist, she returned to ACDI and saw defendant, who agreed that a referral was proper. Defendant told Rigdon that he would reimburse her for the dental work done by the referral dentist. Thereafter, the Wisconsin dentist treated Rigdon. However, defendant never reimbursed her for the cost of that treatment.

¶ 9      Rigdon confirmed that, "as part of going to see the defendant at [ACDI]," she "sustained some injuries or some treatment that [she] had to go get corrected." As a result, she sought $9500

in restitution, consisting of $5000 she paid ACDI for dental work performed after July 2018 and the $4500 she spent for dental work in Wisconsin.

¶ 10     Wadas went to ACDI because his teeth were falling out from cancer treatment. In May 2016, defendant personally installed implants for Wadas. Later, the implants began to loosen. Between October 2018 and June 2019, ACDI dentists (other than defendant) recemented Wadas's teeth. However, the teeth still kept loosening. Defendant and ACDI dentists formed a plan to fix the problem. When their efforts continued to fail, Wadas sought treatment from other dentists and specialists. He submitted invoices to show what he spent on the remedial treatment.

¶ 11     The trial court found defendant guilty of seven counts of unlicensed practice of dentistry. On June 9, 2021, the trial court held a sentencing hearing. No presentence investigation report (PSI) was presented to the trial court, as defense counsel waived it. Instead, defense counsel and defendant's 78-year-old wife asserted that defendant was the couple's sole provider, that both were in poor health, and that the loss of ACDI was difficult for them.

¶ 12     The written sentencing order provided:

> "Defendant is sentenced to serve 270 day(s) in Du Page County Jail. Defendant is sentenced to Conditional Discharge for a term of 24 month(s). During that time the Defendant shall:"

The order then listed the terms of conditional discharge. Toward the bottom, it stated, "Defendant's motion for a stayed sentence is denied," "Future date for restitution hearing," and "Defendant is taken into the custody of Du Page County."

¶ 13     The court held a restitution hearing on July 29, 2021. Defendant, who had served 49 days of his jail sentence, did not testify at that hearing. The trial court awarded restitution of $9500 to Rigdon and $4663.80 to Wadas. The written order for restitution provided:

"Defendant is sentenced to 270 day(s) in Du Page County Jail. During that time the Defendant shall:

1. Pay $9,500 in restitution to [Rigdon] in equal monthly installments or as ordered by the Court. Such payments must be made in full not less than 60 days prior to the end of the term. The office of [the] States Attorney is responsible for monitoring this restitution. Also, pay $4,663.80 in restitution to [Wadas] in equal monthly installments or as ordered by the Court. Such payments must be made in full not less than 60 days prior to the end of the term. The office of [the] States Attorney is responsible for monitoring this restitution. All payments are to be made to the Circuit Court Clerk.

\*\*\*

3. Any and all money paid by the Defendant or on the Defendant's behalf, from today's date forward, shall be applied to restitution until the restitution is paid in full.

\* \* \*

After hearing, defendant is ordered to pay restitution as indicated."

Like the sentencing order, the restitution order stated toward the bottom, "Defendant's motion for a stayed sentence is denied," "Future date for restitution hearing," and "Defendant is taken into the custody of Du Page County." However, neither at the restitution hearing nor in the restitution order did the trial court make a specific finding about defendant's ability to pay restitution. Nor did the court specify at the hearing the time frame for defendant to pay all restitution.

¶ 14   On August 25, 2021, defendant filed a "Motion to Vacate, Reconsider, and/or Modify Sentencing Order." In the motion, defendant argued, among other things, that restitution was improper because a licensed dentist and not defendant completed the dental work that Rigdon and Wadas received through ACDI.

¶ 15    On September 16, 2021, the trial court held a hearing on the motion. Defense counsel, noting that defendant had served 98 days of his jail sentence, asked the court to impose a term of supervision instead of conditional discharge. Counsel said, "Right now, there is no employment forthcoming for [him] after the sentence is served." Counsel never argued that the restitution order was improper because the court did not consider defendant's ability to pay. Without elaboration, the court denied the motion.

¶ 16    Defense counsel then made an oral request that the court (1) appoint the Office of the State Appellate Defender (OSAD) to represent defendant on appeal and (2) allow defendant to reside in New Mexico after serving his jail sentence. The court asked the State if it objected. The State said it was unprepared to address whether the appointment of OSAD was proper. The State suggested that defense counsel file a motion for an OSAD appointment. Regarding whether defendant should be allowed to reside in New Mexico upon his release, the State asserted that "[t]here would be [an objection], contingent on the restitution at that time." The court paused the case briefly to consider defendant's requests. After the recess, the court granted defendant's request to reside in New Mexico upon his release. The court advised the State that "presumably he can make restitution from where he is at in New Mexico." The State asked, "And if he doesn't?" The court responded, "Well, then certainly you could bring a PTR [(petition to revoke conditional discharge)] and proceed that way." Concerning the OSAD appointment, the court, without elaboration, "allow[ed] that as well." The court did not inquire about defendant's financial condition before appointing OSAD.

¶ 17                                    II. ANALYSIS

¶ 18    At issue in this appeal is whether the restitution order is improper because (1) the costs Rigdon and Wadas incurred were not the result of defendant's criminal conduct, (2) the trial court

failed to expressly find that defendant was able to pay restitution, and (3) even if no such express finding was required, the restitution order fails to specify the time frame for defendant to pay all restitution. However, before considering these issues, we must address two preliminary matters.

¶ 19    First, the trial court appointed OSAD without first determining whether defendant was indigent. See 725 ILCS 105/10(a) (West 2020) ("The State Appellate Defender shall represent indigent persons on appeal in criminal and delinquent minor proceedings, when appointed to do so by a court under a Supreme Court Rule or law of this State."). That was improper. *People v. Adams*, 388 Ill. App. 3d 762, 768 (2009) (court must not make an indigency determination without a specific inquiry into the defendant's ability to pay for private counsel). However, briefing and oral argument are complete. Remedying the error would result in further delays and the expenditure of precious judicial resources. Therefore, we simply caution the trial court to follow the rules for appointing OSAD. See *People v. Suarez*, 224 Ill. 2d 37, 45 (2007) (recognizing that remand is improper in some situations where doing so would result only in wasting time and money and expend limited judicial resources).

¶ 20    The second threshold issue is that defendant claims that he preserved review of the appellate issues he raises. Specifically, he contends that "following sentencing and the restitution hearing, [trial] counsel filed [the motion to vacate,] in which he argued that the trial court erred in its determination of the restitution amount, so this issue is preserved for appellate review." However, defendant also contends that if we determine that any of his argument is forfeited, we should apply the plain-error doctrine or find trial counsel ineffective.

¶ 21    Generally, on appeal, we consider forfeited for appeal any issue not raised at trial and in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 198 (1988). Here, the record reflects that defendant argued in the trial court that restitution was improper because his unauthorized practice

of dentistry did not cause the injuries Rigdon and Wadas sustained. Because defendant raised this in the trial court, it is not forfeited.

¶ 22    However, defendant did not argue at the restitution hearing or in his posttrial motion that (1) the trial court erred by ordering restitution without expressly finding that defendant was able to pay or (2) the restitution order is unclear concerning the time frame for payment of all restitution. Thus, he forfeited our review of these issues. The question becomes whether we nevertheless may review these issues under the plain-error rule or because trial counsel was ineffective for failing to raise them.

¶ 23    Forfeiture does not apply when the issues raised fall within the parameters of the plain-error rule. *People v. Quezada*, 2022 IL App (2d) 200195, ¶ 40. Review of a forfeited error under the plain-error rule is proper when the error is plain and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005)). Also, the failure to preserve a meritorious sentencing issue for appeal may constitute ineffective assistance of counsel, *i.e.*, unreasonable conduct by counsel that prejudiced the defendant. See *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

¶ 24    Defendant argues that the trial court failed to (1) expressly find that he was able to pay restitution and (2) clarify the time frame he had to make full restitution—both of which fall under the second prong of plain-error review, *i.e.*, the alleged errors were so serious that the integrity of the judicial process was affected. We agree that our review of these issues is proper under the second prong of plain error. See *People v. Birge*, 2021 IL 125644, ¶ 50.

¶ 25 Accordingly, we review for plain error whether (1) the trial court was required to expressly find that defendant was able to pay restitution and (2) the restitution order properly indicates the time frame for defendant to pay all restitution. Alternatively, we determine whether trial counsel was ineffective for failing to preserve these issues for appeal. With the above in mind, we turn to the merits of this appeal.

¶ 26 Generally, a trial court's order for restitution will not be disturbed on appeal absent an abuse of discretion. *People v. Cameron*, 2012 IL App (3d) 110020, ¶ 35. A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would adopt the court's view. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

¶ 27 That said, an order for restitution must comply with section 5-5-6 of the Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-5-6 (West 2020)). *People v. Boots*, 2022 IL App (2d) 200640, ¶ 51 ("Compliance with [section 5-5-6 of the Corrections Code] is mandatory."). We review *de novo* whether the restitution order here is consistent with this statute. *Cameron*, 2012 IL App (3d) 110020, ¶ 35.

¶ 28 The unlicensed practice of dentistry is a Class A misdemeanor, not under the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/1-1 *et seq.* (West 2020)) but under section 38 of the Illinois Dental Practice Act (225 ILCS 25/38 (West 2020)). Because the offense does not arise under the Criminal Code, restitution is discretionary, not mandatory. See 730 ILCS 5/5-5-6 (West 2020); *People v. McCormick*, 332 Ill. App. 3d 491, 499 (2002). In determining restitution—which is a sentence (see *id.*)—the rules of evidence are relaxed. See *People v. Williams*, 149 Ill. 2d 467, 490 (1992). As our supreme court observed:

"[T]he rules of evidence that govern the guilt or innocence phase of a trial are not applicable at sentencing. Instead, a sentencing judge is given broad discretionary power to consider

various sources and types of information so that he can make a sentencing determination within the parameters outlined by the legislature. [Citation.] Evidence is admissible in a sentencing hearing provided the proffered evidence is relevant and reliable." *Id.*

With this framework in mind, we consider the issues defendant has raised.

¶ 29    We first address defendant's argument that the trial court erred when it ordered restitution for costs Rigdon and Wadas incurred that were not the result of defendant's criminal conduct. Defendant notes that he is not challenging the part of the restitution order directing him to reimburse Rigdon for the $5000 she spent for treatment at ACDI. Rather, he argues that he is not liable for the remaining $4500 Rigdon seeks or the $4663.80 he was ordered to pay Wadas.

¶ 30    In reviewing this issue, we apply section 5-5-6 of the Corrections Code (730 ILCS 5/5-5-6 (West 2020)). The trial court may award "restitution in cash, for out-of-pocket expenses, damages, losses, or injuries found to have been proximately caused by the conduct of the defendant." *Id.* § 5-5-6(a).

> "In fixing the amount of restitution to be paid in cash, *** the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and any other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct of the defendant[.]" *Id.* § 5-5-6(b).

¶ 31    In construing section 5-5-6(b) of the Corrections Code, we are guided by the well-settled rules of statutory construction. "The primary rule of statutory construction is to give effect to the true intent of the legislature." *People v. Brooks*, 158 Ill. 2d 260, 264 (1994). "[T]he language of a statute is the best indication of the legislative drafters' intent." *Id.* "Where the drafters' intent can be ascertained from the statutory language, it must be given effect without resort to other aids for

construction." *Id.* "Furthermore, when ascertaining legislative intent, rules of statutory construction require that the entire statute be considered." *Id.* "As regards penal statutes, they are to be strictly construed in favor of an accused without, however, defeating the legislative intent." *Id.*

¶ 32 "A defendant may be ordered to make restitution if the losses sustained were proximately caused by the same criminal conduct of the defendant as that of which he was convicted." (Internal quotation marks omitted.) *People v. Adame*, 2018 IL App (2d) 150769, ¶ 15. " 'The court may order restitution for losses incurred by the same victim as the result of the same criminal conduct of the defendant, even if those losses were not set forth in the charging instrument.' " *Id.* (quoting *People v. Fontana*, 251 Ill. App. 3d 694, 706 (1993)). " 'However, restitution is improper for matters unrelated to the charges at issue.' " *Id.* (quoting *Fontana*, 251 Ill. App. 3d at 706).

¶ 33 The purpose of section 5-5-6 is to make the defendant's victims whole while also making the defendant pay any expenses the victims incurred because of the defendant's criminal actions. *People v. Harris*, 319 Ill. App. 3d 534, 536 (2001). Courts have liberally construed section 5-5-6 of the Corrections Code to satisfy this purpose. *Id.*

¶ 34 Here, count IV charged:

"[Defendant] did on or between the 1st day of August, 2018 through the 30th day of June, 2019, *** commit the offense of Unlicensed Practice, in that said defendant, knowingly employed a dentist or other entity to provide dental care to a patient, James Wadas, when said defendant's dental license was not valid, the statute of limitations having been tolled pursuant to 720 ILCS 5/3-7(a)(3) from August 27, 2019, to date, in violation of 225 ILCS 25/37(1) [(West 2018)]."

¶ 35 Similarly, count V charged:

"[Defendant] did on or between the 1st day of August, 2018 through the 30th day of August, 2019, \*\*\* commit the offense of Unlicensed Practice, in that said defendant, knowingly employed a dentist or other entity to provide dental care to a patient, Sarah Rigdon, when said defendant's dental license was not valid, the statute of limitations having been tolled pursuant to 720 ILCS 5/3-7(a)(3) from August 27, 2019, to date, in violation of 225 ILCS 25/37(1)[(West 2018)]."

¶ 36    As can be seen, the counts named Rigdon and Wadas but did not allege any out-of-pocket expenses they incurred. Nonetheless, under the principles above, such expenses were recoverable if proximately caused by the same criminal conduct of which defendant was convicted. Defendant was convicted of employing dentists who performed dental work on Rigdon and Wadas after defendant's dental license was revoked. 225 ILCS 25/37(1) (West 2018) (unlicensed practice of dentistry occurs when, among other things, an unlicensed dentist employs dentists who can provide dental services). Rigdon and Wadas testified that they received dental treatment at ACDI after July 31, 2018—that is, after defendant's license was revoked and while he was still employing dentists. Rigdon and Wadas experienced significant issues with ACDI dentists' work, and both sought treatment elsewhere to remedy those issues. The costs they incurred for that remedial work were proximately caused by the dental work performed by ACDI dentists after defendant's license was revoked.

¶ 37    Instructive on this point are *Cooper v. Paris*, 413 So. 2d 772 (Fla. Dist. Ct. App. 1982), and *Vista Designs, Inc. v. Silverman*, 774 So. 2d 884 (Fla. Dist. Ct. App. 2001). In *Cooper*, a real estate agent licensed in Georgia learned of a substantial piece of property for sale in Florida. *Cooper*, 413 So. 2d at 772-73. The agent found a buyer for the property, a Georgia real estate investor and remained instrumental in the property's eventual sale. *Id.* at 773. During that time,

the investor's attorney knew that the agent was unlicensed in Florida, but the evidence was conflicting on whether the investor also knew that. *Id.* After the agent was paid his commission, consisting of personal checks and investor promissory notes, the investor defaulted on some of his payments to the buyer and the agent. *Id.* Legal action ensued, and the agent sought to recover under the promissory notes. *Id.* The investor claimed, among other things, that the promissory notes were invalid because the agent was unlicensed in Florida. *Id.* The investor asked for restitution of the amounts he had already paid the agent on the promissory notes. *Id.* The agent moved for summary judgment, and the trial court granted that motion. *Id.*

¶ 38    The appellate court reversed, holding that one who acts in contravention of licensing requirements cannot profit from being unlicensed. See *id.* at 772, 774. After observing that the real estate licensing requirement exists to prevent unscrupulous practices and protect the consumer, the court reasoned:

> "[T]o refuse to return the monies paid [by the investor] would affront [the] affirmative duty to see that the party violating public policy not benefit in any way as a result of his wrongdoing. [Citation.] Otherwise, [the agent] stands to be rewarded for his illegal activities, a result to which this Court cannot subscribe. Moreover, by allowing [the agent] to keep these monies this Court would implicitly encourage unlicensed persons to seek up-front money ***." *Id.* at 774.

¶ 39    In *Silverman*, a design company paid a patent attorney $25,000 to sue a subcontractor that improperly copied some of the design company's product. *Silverman*, 774 So. 2d at 885. Although the patent attorney had an office in Florida, he was unlicensed to practice law there and, thus, hired a Florida attorney to work on the case. *Id.* The Florida attorney and the design company were unaware that the patent attorney was unlicensed in Florida. *Id.* Although the patent attorney never

tried the case (which settled), he did prepare pleadings, conduct legal research, and take part of a deposition. *Id.* at 885-86. The patent attorney indicated that he never intended to appear in court, as he believed he was merely hired as " 'of counsel' " by the design company. *Id.* at 885.

¶ 40    At issue on appeal was, among other things, whether the patent attorney had to repay the $25,000 he received from the design company. *Id.* at 886. The appellate court determined that he did. *Id.* The court observed:

> "While the trial court made no express finding that [the patent attorney] violated any law by not being admitted to practice law in Florida, he clearly violated the letter and spirit of the law by engaging in the unauthorized practice of law in Florida, notwithstanding the fact that he is admitted to practice before the State of New Jersey and Patent Bars. Clearly, public policy dictates that a party should be unable to benefit in any way as a result of [his or her] wrongdoing." *Id.* at 887.

Unpersuasive to the appellate court was the fact that the patent attorney provided professional and skilled legal services. *Id.* at 888. The court noted that "[w]hile [the patent attorney] conferred a benefit upon [the design company] by providing expert legal services which may have assisted in the settlement of its legal dispute with [the subcontractor], public policy, however, dictates that a party should not benefit from its wrongdoing." *Id.*

¶ 41    The facts here are just as egregious as those in *Cooper* and *Silverman*. After losing his dental license in Illinois, defendant continued to hire dentists there to perform dental work on patients. Both Rigdon and Wadas received inadequate treatment from ACDI dentists and thus were forced to seek treatment elsewhere to remedy the lingering issues from work performed by ACDI dentists. Defendant is liable for those out-of-pocket expenses.

¶ 42    Moreover, in Illinois, like in Florida, strong public policies are in place to protect consumers from those whose services require licensing. Section 37 of the Illinois Dental Practice Act (225 ILCS 25/37 (West 2020)) provides that "[t]he practice of dentistry by any person not holding a valid and current license *** is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare." Running a dental practice without a valid dental license constitutes the unlicensed practice of dentistry. See *People ex rel. Illinois Society of Orthodontists v. United States Dental Institute, Inc.*, 57 Ill. App. 3d 1029, 1034 (1978). Thus, as with the real estate agent in *Cooper* and the patent attorney in *Silverman*, allowing defendant here to escape liability for his criminal conduct of running a dental practice without himself being a licensed dentist would allow him to benefit from his criminal conduct. This would be harmful precedent.

¶ 43    Defendant argues that he is not liable to Rigdon for the $4500 or to Wadas for the $4663.80, because their dental problems stemmed from defendant's work before August 1, 2018, when his license was still valid, and not from injuries sustained after that date. We disagree. First, the evidence shows that Rigdon and Wadas received substandard dental treatment from ACDI *after* August 1, 2018, and eventually sought other dental professionals to remedy their issues. Second, as the State observes, restitution in this context "does not require that a victim receive poor or inadequate work." The State needed to prove only that (1) Rigdon and Wadas received treatment at ACDI while defendant was unlicensed and (2) the treatment led to further treatment from other providers, such that proximate causation existed. The State's evidence proved those two points.

¶ 44    We next address whether (1) the trial court was required to expressly find that defendant was able to pay restitution and (2) even if no such express finding was required, the case must be remanded for the trial court to clarify the time frame for defendant to pay all restitution. As noted

above, we consider whether defendant has shown plain error or whether trial counsel was ineffective for failing to raise these issues.

¶ 45    The first step in a plain-error analysis is to decide whether " 'plain error' occurred." *Quezada*, 2022 IL App (2d) 200195, ¶ 40 (quoting *Piatkowski*, 225 Ill. 2d at 564-65). "Plain error" is a " 'clear' " or an " 'obvious' " error. *Id.* (quoting *Piatkowski*, 225 Ill. 2d at 565 n.2). Thus, we address whether a clear or obvious error arose when (1) the trial court did not expressly find that defendant was able to pay restitution and (2) the restitution order did not clearly indicate the time frame for defendant to pay all restitution.

¶ 46    Resolving these issues requires an examination of section 5-5-6(f) of the Corrections Code (730 ILCS 5/5-5-6(f) (West 2020)), which governs setting the time and manner of restitution. It provides:

> "Taking into consideration the ability of the defendant to pay, *** the court shall determine whether restitution shall be paid in a single payment or in installments[ ] and shall fix a period of time not in excess of 5 years, *** within which payment of restitution is to be paid in full." *Id.*

¶ 47    As section 5-5-6(f) of the Corrections Code indicates, "[a] trial court must determine a reasonable time and manner for the payment of restitution." *People v. Day*, 2011 IL App (2d) 091358, ¶ 56. To determine a reasonable time frame and manner for payment of restitution mandates, the court must first consider a defendant's ability to pay. *Id*. A trial court is *not* required to consider a defendant's ability to pay in setting the *amount* of restitution. *Id.*

¶ 48    Here, the trial court did not expressly find that defendant was able to pay restitution. While, at first blush, this appears to be error, case law suggests otherwise.

¶ 49    In *People v. Whitfield*, 146 Ill. App. 3d 322, 323 (1986), the defendant pleaded guilty to battery and was ordered to pay $2781.64 in restitution to cover the victim's medical bills. Evidence presented at the defendant's sentencing hearing, including the PSI, revealed that the defendant had no dependents or prior arrests and was in good health. *Id.* at 324. The defendant, one of nine children living with his single mother, attended school regularly and worked hard, but he had difficulty reading. *Id.* at 323. For several summers before he was arrested, the defendant enrolled in a job-training program that helped him obtain summer employment and to earn minimum wage. *Id.* at 324. The defendant dropped out of high school during his junior year to get a job and help his mother pay the bills. *Id.* Although the defendant was not employed when he was sentenced, he was working on obtaining his general equivalency diploma and doing well in that program. *Id.* Before the trial court sentenced the defendant, defense counsel alerted the court that it needed to assess the defendant's ability to pay before ordering restitution. *Id.* Counsel expressed doubt that the defendant could pay, while the State believed that he could, surmising that the defendant would be employed in the future. *Id.* "The court, without commenting on [the defendant's] financial status, ordered him to pay restitution to the victim ***." *Id.* Later, the defendant moved the court to vacate his guilty plea and reconsider the restitution order, arguing, among other things, that the court failed to consider his ability to pay. *Id.* The court never addressed that issue when it ruled on the posttrial motions. *Id.* The defendant appealed, arguing only that the trial court erred in failing to consider his ability to pay before ordering restitution. *Id.* The "[d]efendant base[d] his assertion on the court's failure to hold a separate hearing, or at least to make findings, on the question of his ability to pay the restitution as ordered." *Id.*

¶ 50    The appellate court affirmed. *Id.* The appellate court determined that, because there was sufficient evidence before the trial court from which it could assess the defendant's ability to pay,

no error arose when the trial court did not expressly find that the defendant had the ability to pay before "determining a payment period." *Id.* at 327. Specifically, the facts before the trial court were that the defendant "was acquiring an education and job skills; he was well and able-bodied; he had no dependents[;] and [he] appeared to have a healthy attitude toward improving his lot in life." *Id.* at 326. The appellate court also noted that, although the defendant was currently unemployed, "[i]t is not essential to an order of restitution that the defendant be employed at the time of sentencing." *Id.* at 327. "[I]t is possible that during the period of probation [the defendant] will be able to pay." *Id.*

¶ 51    Under *Whitfield*, a trial court is not required to expressly state that it considered a defendant's ability to pay. Rather, there need only be sufficient evidence before the court concerning the defendant's ability to pay. Here, there was evidence before the court that defendant could afford to pay restitution. Specifically, defendant posted a $1500 cash bond the same day he was arrested and, later, could afford to retain private counsel. Rather than stay in Illinois, defendant had funds to travel to Florida and relocate to Texas and then New Mexico—all within six months of posting bond. Also, defendant appears to have had a successful career. He worked as a professional dentist for 40 years and owned a specialty dental practice for at least 13 years. Further, defendant's family owned a dental implant company, where the evidence strongly suggests defendant worked after leaving ACDI. Although—as trial counsel stressed—defendant was unemployed at the time of sentencing (and could not work as a dentist given the license revocation), that fact is not decisive under *Whitfield*. Moreover, whether defendant is truly unemployed is questionable. At trial, defendant indicated that he is semiretired and working as a consultant. The fact that he has not returned to full-time work suggests that he amassed enough money throughout his career to support himself and his wife.

¶ 52    Citing section 5-5-6(f) of the Corrections Code (730 ILCS 5/5-5-6(f) (West 2020)), defendant argues that "the trial court is required to consider any real or personal property or any other assets of a defendant" in considering a defendant's ability to pay. In making this argument, defendant claims that *Whitfield* is distinguishable because (1) the version of the restitution statute applied in *Whitfield* did not contain language requiring consideration of the defendant's assets and (2) there was no evidence here of defendant's assets. We disagree. Although it is true that section 5-5-6(f) now requires the court to consider "any real or personal property or any other assets of the defendant" in assessing the ability to pay (*id.*), nothing indicates that consideration of the defendant's assets and property is essential to assessing a defendant's ability to pay restitution. While in some cases such an assessment may be necessary, we cannot conclude that it was so here. The evidence here indicated that defendant is a highly educated professional who was a licensed dentist for 40 years, owned a specialty practice for at least 13 years, and now works as a consultant at a family-owned dental implant company.

¶ 53    Defendant also argues that the trial court failed to consider his and his wife's health, his status as the sole provider for himself and his wife, and his expenses. Putting aside the potential unreliability of some of these factors and that the trial court had the advantage of observing defendant and his wife in court, defendant is simply asking us to reevaluate the evidence pertaining to restitution. As a court of review, we cannot do that. See *People v. Sven*, 365 Ill. App. 3d 226, 241 (2006).

¶ 54    Given all the above, we conclude that it was not clear or obvious error for the trial court not to expressly find that defendant was able to pay restitution. Therefore, defendant cannot invoke the plain-error rule to bypass forfeiture of this claim. Likewise, trial counsel was not ineffective,

because the claim had no merit and defendant was not prejudiced by counsel's failure to raise it. See *People v. Coleman*, 158 Ill. 2d 319, 349 (1994).

¶ 55 Of course, the fact that there was evidence before the trial court from which it could assess defendant's ability to pay does not mean that the restitution order is proper. A trial court must specifically consider a defendant's ability to pay restitution to determine the time frame and manner of restitution payment. *Day*, 2011 IL App (2d) 091358, ¶ 56. Thus, for instance, a court should consider that a defendant with many liquid assets might be able to easily pay a small amount of restitution in a very short time, while a defendant with no assets might not.

¶ 56 Defendant claims that the trial court failed to specify the period during which he must pay all the restitution. Referencing the restitution order, defendant argues: "Presumably, 'the term' refers to the 270 days that [he] was ordered to serve in Du Page County Jail, but it is not clear because the trial court did not make any findings on the record." The transcript from the hearing on defendant's motion to vacate suggests that the parties and the trial court believed that restitution had to be paid in full during defendant's term of conditional discharge. The State defends this interpretation, arguing that we must construe the restitution order in light of the court's sentencing order, which provides for two years of conditional discharge.

¶ 57 In construing the restitution order, we observe that "[a] court order is to be interpreted in its entirety with reference to other parts of the record, including pleadings, motions, and issues before the [trial] court." *Garcia v. Gutierrez*, 331 Ill. App. 3d 127, 129 (2002). "An order is to be construed in a reasonable manner that gives effect to the apparent intention of the trial court." *Id.*

¶ 58 The restitution order is certainly, at best, less than ideal. As defendant notes, the order provides for paying restitution during defendant's jail time, which is improper (see 730 ILCS 5/5-5-6(f) (West 2020) (time during which restitution must be paid does not include periods of

incarceration)). The passing statements at the hearing on the motion to vacate do not persuade us that defendant knew that he had to pay restitution in monthly installments during his term of conditional discharge. The restitution order directed defendant to pay $14,163.80 in restitution to Rigdon and Wadas in equal monthly installments 60 days before the end of "the term." However, without knowing what "the term" is, we (and, more importantly, defendant) do not know the amount defendant must pay per month to satisfy the restitution order. This is fatal. See *Boots*, 2022 IL App (2d) 200640, ¶ 52 ("A restitution order is 'fatally incomplete' when the trial court 'does not specify a particular time' for payment." (quoting *In re Estate of Yucis*, 382 Ill. App. 3d 1062, 1067 (2008)).

¶ 59    *Whitfield* is again helpful here. In *Whitfield*, the appellate court determined that, "[w]hile the trial court did not define a payment schedule, as called for in section 5-5-6(f) [of the Corrections Code], the court's order called for restitution to be made within one year," *i.e.*, within the defendant's term of probation]. *Whitfield*, 146 Ill. App. 3d at 326. Payment of restitution within one year "was reasonable in light of the fact that defendant was not yet employed and did not know how much he would be earning or how often he would be paid." *Id.*

¶ 60    The difference between *Whitfield* and this case is that the trial court in *Whitfield* set the term for paying restitution as one year. Unlike in *Whitfield*, the trial court here set a payment schedule of equal monthly installments, but it did not indicate when defendant must make the equal monthly installments. Although the evidence before the court indicated that defendant generally could pay restitution, the trial court needed to specifically consider defendant's ability to pay in setting a time frame for the payment of all restitution.

¶ 61    We determine that the failure to define the time during which defendant must pay all the restitution is a clear and obvious error. Thus, even though defendant forfeited this issue by failing

to raise it in the trial court, we invoke the plain-error rule to review it. Likewise, trial counsel's failure to raise the issue was unreasonable *and* prejudicial. See *Strickland*, 466 U.S. at 688, 694.

¶ 62    Given the error, we must consider a remedy. The proper remedy is to remand this case for the limited purpose of allowing the trial court to determine the time frame for defendant to pay restitution in full. *Boots*, 2022 IL App (2d) 200640, ¶ 54. Of course, in setting this time frame, the court must consider defendant's ability to pay. *Id.*

¶ 63    As a final matter, we note that, should defendant be unable to pay restitution within the court-set time, he can move for more time to pay—like the defendant in *Whitfield*. See 730 ILCS 5/5-5-6(i) (West 2020); see also *Whitfield*, 146 Ill. App. 3d at 327. However, defendant should be aware that the trial court will afford additional time only if, through no fault of his own, he cannot pay within the time set. 730 ILCS 5/5-5-6(i) (West 2020) ("If the court shall find that the defendant has failed to make restitution and that the failure is not wilful, the court may impose an additional period of time within which to make restitution."); see also *Whitfield*, 146 Ill. App. 3d at 327.

¶ 64                                    III. CONCLUSION

¶ 65    For the reasons stated, we affirm in part the judgment of the circuit court of Du Page County and remand for the limited purpose of allowing the trial court to set the time frame for payment of restitution in full.

¶ 66    Affirmed and remanded with directions.

*People v. D'Alise*, 2022 IL App (2d) 210541

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-CM-1848; the Hon. Monique N. O'Toole, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Tiffany Boye Green, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Kristin M. Schwind, Assistant State's Attorneys, of counsel), for the People. |