NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250892-U

NO. 4-25-0892

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 27, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ROBERTO ARTURO LIMA, | ) | No. 21CF1278 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the prison sentence of defendant, who pleaded guilty to criminal sexual assault, where (1) he was not denied effective assistance of plea counsel, (2) his sentence was not based on inappropriate criteria, and (3) his postplea counsel complied with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024).

¶ 2    Defendant, Roberto Arturo Lima, pleaded guilty to one count of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2020)) pursuant to an open plea. The trial court sentenced defendant to 14 years and 10 months in prison. Defendant appeals, arguing that (1) he was denied effective assistance of plea counsel, (2) his sentence was excessive because it was based on improper facts, and (3) his postplea counsel did not comply with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On December 8, 2021, a grand jury returned an indictment charging defendant with

criminal sexual assault (count I) (720 ILCS 5/11-1.20(a)(1) (West 2020)) and criminal sexual abuse (count II) (720 ILCS 5/11-1.50(a)(1) (West 2020)) against Z.C., his wife's 18-year-old niece, on August 14, 2021.

¶ 5        On July 25, 2022, the State filed a motion *in limine* seeking to introduce at trial certified copies of defendant's three convictions for sex offenses involving three victims who were each 15 and 16 years old. The events in those cases took place in 2005 and 2006, when defendant was 21 and 22 years old.

¶ 6                              A. Psychosexual Risk Evaluation

¶ 7        In August 2022, defendant's counsel referred defendant to Illinois Forensic Associates, Inc., "to obtain a Psychosexual Risk Evaluation to assess risk for sexual re-offending, as well as provided treatment recommendations as needed."

¶ 8        Defendant met with the evaluator in person for three hours and by phone a few days later for some "additional information." The evaluator's report described defendant as "generally cooperative" throughout the evaluation; "[h]owever, he appeared to be methodical in providing information in an attempt to present [himself] in a favorable light." The evaluator described defendant as a "poor historian" who attempted to avoid discussing the "index offense." The evaluator stated that defendant "demonstrated a pervasive pattern of minimization and rationalization for his sexual offenses. In addition, he expressed victimization of the index offense 'because she was twerking and dancing [and he] was piss drunk at the time.' "

¶ 9        Defendant reported that he is a " 'stay-at-home-dad' " to his three children, an 11-year-old and twin 8-year-olds. Defendant reported that he had been in a relationship with his wife for nearly 13 years. He stated that his wife is his " 'best friend' " and his relationship with her is " 'great.' " He reported that his relationship with his children is " 'great.' '' He stated that this

- 2 -

situation has been " 'tough' " on his wife and " 'heartbreaking' " for her, but she still wants to be with him. When the evaluator asked defendant about his "family['s] perception of his sexual offenses, he stated, " 'They didn't know it was illegal, this is normal for my culture…an older man and a younger woman. They don't understand why they (victims) call the cops. They think it's normal when it comes to the age difference.' "

¶ 10 Defendant "reported he has had sexual contact with five females under 18 years old as an adult." Defendant discussed his legal history, which included convictions for " 'criminal sexual abuses' " against " 'three different victims.' " He reported that he was 20 or 21 years old and they were all " '16 years old.' " The report contained police incident reports from each of defendant's three prior criminal sexual offenses, as well as defendant's accounts of those offenses.

¶ 11 When he was asked about victim empathy/victim impact, defendant stated:

" 'Not good. I think I may have steered them in a different path that they could have been on. Now I know it's wrong, but at that time I didn't know it was wrong. Spanish cultures…it's different…you get a younger virgin…the older man takes care of the younger girl. Now, I know it's wrong.' "

¶ 12 Defendant reported that when he was released from prison after his sex offense convictions, he attended sex offender treatment for 10 months to a year but did not remember much about it. He was unable to provide information he learned from the treatment. Defendant admitted that he was also convicted of failure to register his address and violated his parole when he committed theft in 2010.

¶ 13 When asked about the subject offense, defendant stated: " 'I messed up by cheating, but I didn't force nobody.' " He said, " 'I feel victimized a little bit, not physically forced, but took advantage of me.' " He admitted he and Z.C. were drinking alcohol prior to the offense. He said

Z.C. was " 'twerking' " on him and asking him how to dance " 'after all that stuff happened.' " He thought Z.C.'s family was pushing to file charges against him.

¶ 14 During the second interview, defendant said: "I admit to doing stuff with her. I am not admitting force but yes to her dancing and twerking and drinking… there was touching, and she said, 'we can't do this' and I stopped." He said he touched her in the "crotch area" and she did the same to him over his pants. He said he did not remember digitally penetrating Z.C. but remembered touching her "in that area."

¶ 15 When asked about how he thought Z.C. felt after the incident, he said:

" 'If I put myself in her shoes; if I were her…regret on her part, thinking "I shouldn't have done that and if my aunt finds out I have to be a victim"… I would feel guilty that I messed up; I would feel sorry, like "why did I do that"? More like I messed up.' "

¶ 16 The evaluator concluded that defendant "expressed a pervasive sense of victimization regarding the index offense. He deflect[ed] responsibility onto the victim for 'twerking and dancing.' He also stated he was 'piss drunk.' " The evaluator found defendant "exhibited deficits with general self-regulation, deficits in problem solving, general social rejection, negative emotionality, a history of substance use, and problematic cooperation with historical supervision."

¶ 17 The evaluator administered two tests, the Static-99R and the STABLE 2007, which are meant to "produce estimates of sexual recidivism." Based on defendant's combined results of those tests, the evaluator opined that "[w]ith a reasonable degree of clinical certainty, [defendant] is considered well above average risk *** for re-offending." (Emphasis omitted.) The evaluator concluded that defendant "needs to be monitored in the community by a supervisory officer/agent,

such as probation/parole/GPS, and should follow any and all recommendations of said officer/agent." The evaluator also recommended that defendant enter a sex offender treatment program "that offers psycho-education as well as sex offender specific treatment." The evaluator further indicated that defendant "would benefit from being housed at an institution that offers sex offender specific treatment" if convicted and incarcerated.

¶ 18                                    B. Plea Agreement

¶ 19        On October 28, 2022, defendant and the State entered into an open plea agreement. Pursuant to that agreement, defendant agreed to plead guilty to criminal sexual assault in exchange for the State agreeing to dismiss the criminal sexual abuse charge. At the plea hearing, the following colloquy occurred between the trial court and defendant:

"THE COURT: Thank you. So sir, the range of penalties for this offense, this Class 1 felony offense, is a minimum of 4 years in the Illinois Department of Corrections, and a maximum of 15 years in the Illinois Department of Corrections. That would be served at a percentage of 85 percent, and would be followed up by a period of mandatory supervised release for a minimum of 3 years, ranging to a lifetime reporting of mandatory supervised release requirement. You will not receive probation for this offense. You could be fined up to $25,000 for this offense. Do you understand the possible range of penalties?

[DEFENDANT]: Yes. I understand.

THE COURT: There was a little look of confusion as you glanced at your attorney. Do you want some more time to speak with your attorney?

[DEFENDANT]: Yeah. I just didn't know the 85 percent.

THE COURT: Go ahead and speak with your attorney.

[DEFENDANT]: Okay. Thank you."

After coming back on the record, defendant said he understood. Defendant denied that anyone threatened him, pressured him, or promised him anything to plead guilty.

¶ 20 The State then provided the following factual basis for the guilty plea. Defendant is the uncle of 18-year-old Z.C. On August 14, 2021, defendant asked Z.C. if she wanted alcohol. He went with Z.C. to a liquor store to purchase alcohol. Defendant and Z.C. returned to defendant's house in Bloomington, Illinois, where defendant offered Z.C. an alcoholic beverage, which she drank. Z.C. started to get a headache and decided to lie on the couch to go to sleep for the night. Z.C. reported that defendant sat on the couch with her and began rubbing her feet. Z.C. told defendant to stop, but he did not and began rubbing her thigh. Z.C. continued to tell defendant to stop and kept pushing him off. Z.C. said defendant grabbed her buttocks, slid his hand up her shorts and inserted his fingers into her vagina. Z.C. tried to get up, but defendant pushed her down. Defendant then tried to take Z.C.'s shorts off. Z.C. was able to get away by isolating herself in the bathroom. Defendant agreed that the State could call witnesses that would "testify substantially as indicated."

¶ 21 Defendant pleaded guilty, and the trial court accepted the plea. The court ordered a presentence investigation report (PSI) to be prepared.

¶ 22 C. PSI

¶ 23 Defendant's PSI indicated that he is a 38-year-old Hispanic male. Defendant's criminal history indicated that he was charged with assault in New York in 2003. He was sentenced to three years of probation, which he violated several times, and he consequently served six months in jail. Also in 2003, defendant was charged with criminal mischief in New York and sentenced to three years of probation, which he violated several times by failing to report and committing other

crimes. His probation was revoked, and he was ordered to spend six months in jail.

¶ 24    In 2006 and 2007, defendant was convicted of three criminal sexual abuse offenses in McLean County that occurred in 2005 and 2006. According to the history section of the PSI regarding the aggravated criminal sexual abuse offenses, defendant was paroled and readmitted to prison four times before his sentence was discharged on October 29, 2011. In 2007, defendant violated the Sex Offender Registration Act (730 ILCS 150/1 through 12 (West 2006)) by failing to register. With respect to that crime, defendant was paroled and readmitted to prison three times before being discharged on May 27, 2010. Finally, defendant was convicted in Sangamon County of theft in 2011. He was sentenced to two years in prison. In that case, defendant was paroled and readmitted to prison once before he was discharged on May 10, 2012.

¶ 25    In the investigator's summary, she wrote that defendant's criminal record dated back to 2003. The investigator noted that defendant had four felony offenses, three of which were sexual. At the time of the PSI, defendant was living with his wife and their three children in Texas. In addition to his three children with his wife, defendant had a child with a victim from one of his sexual abuse cases. She was 15 years old when she gave birth.

¶ 26    The PSI further contained additional information about defendant's educational background, employment history, substance abuse issues, health conditions, economic status, and family history. According to defendant, he has a "very good relationship" with his mother and a "great relationship with his father whom he sees a couple times per week." Defendant reported that his father is currently suffering from liver cancer. Since 2012, defendant has been a stay-at-home father, providing full-time care to the three children he shares with his wife.

¶ 27                    D. Sentencing Hearing

¶ 28    Defendant's sentencing hearing took place on January 31, 2023. At the hearing, the

trial court admitted into evidence the PSI, letters in support of defendant, and the sex offender evaluation drafted by Illinois Forensic Associates, Inc. One of the letters in support of defendant was from his wife, who stated that defendant "is a wonderful man and I could not have asked for a better father for our children or husband to spend my life with."

¶ 29 The State asked the trial court to sentence defendant to the maximum sentence based on his "prior criminal history." The State highlighted defendant's history of sexually assaulting teenage girls, dating back to 2005. The State contended that defendant is a "sexual predator" who had failed to take advantage of sex offender treatment classes. The State also pointed out statements from the sex offender evaluation, including one in which the evaluator stated that defendant "normalizes his history of offensive behavior as culturally appropriate and demonstrated a limited lack of concern for others."

¶ 30 Defense counsel argued that defendant has been with the same woman for 11 years and has three children with her. Defendant "takes care of his aged father who is dying of cancer." Counsel also pointed out that defendant's last offense was theft and was "more than 12 years ago." Defense counsel referred to the sex offender evaluation and pointed out that the evaluator found that defendant was at "an above average risk of reoffending" and needed counseling because "[i]t is only through counseling that the Defendant is not going to reoffend." Therefore, defense counsel recommended that defendant be sentenced to the minimum of four years in prison and after that, he should "be required to get a sex offender assessment and complete any recommended treatment."

¶ 31 Defendant made a statement in allocution, apologizing to his wife and kids and stating that "if [he] wasn't drinking, [he] would not even be going through this right now." He stated that "the drinking was not good," but "what [he] did was even worse." He said he "stopped

drinking" and has "tried to be the best father and husband possible." Defendant concluded by saying that he was "[s]orry for everything in [his] whole life that [he has] done wrong."

¶ 32        The trial court stated that it considered the letters of support for defendant, the PSI, the psychosexual risk evaluation, arguments by the attorneys, and all statutory factors in aggravation and mitigation. In mitigation, the court found that defendant "did accept responsibility for his conduct" by pleading guilty. In aggravation, the court found defendant had an "extremely serious history of prior criminal [conduct]" involving "multiple prior offenses of the same offense involving young girls." The court also noted:

> "He has been to prison a couple of times. When he was released from prison, he was returned. On parole he was returned for a violation, paroled again, returned, paroled, returned, paroled, returned, and then ultimately discharged, showing that while he is out on parole, he was unable to conform his conduct to the requirements of the law."

¶ 33        The trial court also found that defendant minimized his "level of culpability, blaming the victims, saying they enticed him, you know, danced erotically in front of him to commit the offense he is charged with." The court stated it was "obvious" that "defendant doesn't understand or accept the criminal nature, the serious criminal nature of his conduct, and that he minimizes and blames the victims." The court stated that "the [PSI] confirms what's in the sexual offender evaluation, that he minimizes when he speaks of the prior offenses."

¶ 34        The trial court pointed out that the sex offender evaluation indicated that defendant is "well above average risk for reoffending." The court sentenced defendant to a prison term of 14 years and 10 months, to be served at 85%, followed by 3 years of mandatory supervised release and a requirement to register as a sex offender for the rest of his life.

¶ 35                                  E. Postplea Proceedings

¶ 36           The next day, defense counsel mailed defendant a letter terminating his representation and informing defendant he had 30 days to file a motion to reconsider sentence, which was required to perfect his appeal. Defense counsel enclosed a template motion.

¶ 37           On February 21, 2023, defendant filed a *pro se* motion to reconsider sentence, using the template motion, and argued that he has "been a good citizen for the last 12 years." New counsel filed an appearance the same day.

¶ 38           On March 9, 2023, defense counsel filed an amended motion to reconsider the sentence, asserting that the trial court's sentence was "excessive." Also on March 9, 2023, defense counsel filed an "amended" motion to withdraw the guilty plea, asserting that defendant "did not fully understand the consequences of his actions at the time of the plea" and "had not fully considered the ramifications of the plea agreement."

¶ 39           On April 18, 2023, the State filed a response asserting that (1) the motion to withdraw the guilty plea was untimely because it was not filed within 30 days of defendant's sentencing, (2) the plea was knowing and voluntary, and (3) defendant failed to state a legal basis to allow the withdrawal of his plea or show a manifest injustice occurred.

¶ 40           On June 2, 2023, the trial court held a hearing. Defense counsel agreed that the word "amended" should be stricken from the motion to withdraw the guilty plea because it was the first motion seeking that relief. Counsel explained she incorrectly believed defendant had filed a motion to withdraw the guilty plea based on discussions with defendant's family and without access to the court file when she filed the motion. The court found it lacked jurisdiction to address the untimely motion to withdraw the guilty plea and dismissed the motion.

¶ 41           The trial court then considered defendant's motion to reconsider his sentence.

Defense counsel filed a certificate pursuant to Rule 604(d), certifying in part that she "made any amendments to the motion necessary for the adequate presentation of any defects" in the guilty plea proceedings. At the hearing, counsel admitted she had not "done everything [she] could with the motion to withdraw guilty plea because it's untimely, but we have discussed his motion to reconsider sentence." Defense counsel argued that the court did not give enough weight to the mitigating factors. The State argued that the court properly weighed all aggravating and mitigating factors.

¶ 42        The trial court denied the motion to reconsider. The court began by stating, "[I]t's a very serious charge." The court then stated that "[t]he defendant had an extremely serious prior criminal record, he had been to the Department of Corrections multiple times." The court noted that "[h]e had multiple prior sexual-related offenses in his past involving young girls" and "minimized his culpability in each of those offenses." Defendant filed a motion for leave to file late notice of appeal, which this court allowed on August 31, 2023.

¶ 43                        F. Appellate Court Decision

¶ 44        This court issued a decision on July 19, 2024, vacating the matter and remanding for further proceedings because the trial court erred as a matter of law when it dismissed defendant's motion to withdraw his guilty plea for lack of jurisdiction. *People v. Lima*, 2024 IL App (4th) 230490-U, ¶¶ 18, 26. Specifically, we ruled that defendant's timely *pro se* motion to reconsider sentence gave the trial court jurisdiction over the matter and the court retained that jurisdiction when counsel filed a motion to withdraw the guilty plea before resolution of the pending motion to reconsider sentence. *Lima*, 2024 IL App (4th) 230490-U, ¶ 18. With respect to counsel's Rule 604(d) certificate, we found that counsel's admission that the motion to withdraw the guilty plea was not in proper form rebutted her facially compliant Rule 604(d) certificate. *Lima*,

- 11 -

2024 IL App (4th) 230490-U, ¶ 23. Thus, we remanded the cause "to the trial court for (1) the filing of a Rule 604(d) certificate; (2) the opportunity to file a new motion to withdraw the guilty plea and/or reconsider the sentence, if counsel concludes that a new motion is necessary; and (3) a new motion hearing." (Internal quotation marks omitted.) *Lima*, 2024 IL App (4th) 230490-U, ¶ 24.

¶ 45                                            G. Remand

¶ 46            On remand, on March 17, 2025, defendant filed an amended motion to withdraw his guilty plea, asserting that he had been given improper information by his plea counsel and felt rushed into pleading guilty. He claimed he did not fully understand the consequences of his plea and did not have the opportunity to fully consider the ramifications of the plea agreement at the time. The State filed a response, arguing that (1) defendant's plea counsel did not provide ineffective assistance and (2) defendant's plea was knowing and voluntary.

¶ 47            On July 28, 2025, the trial court held a hearing on defendant's amended motion to withdraw his guilty plea filed on March 17, 2025, and the amended motion to reconsider his sentence filed on March 9, 2023. Defense counsel also filed a Rule 604(d) certificate, indicating that she "made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 48            At the hearing, defendant testified that his counsel during plea negotiations was Brendan Bukalski, but he was not in court with him on the day of the plea hearing. A different attorney, Kevin Sanborn, was there. Defendant denied having any in-person discussions with his attorney before that day but said he met with Sanborn before the hearing. Defendant testified that Sanborn told him the minimum and maximum sentence he was facing. According to defendant, Sanborn told him he needed to take the plea or go to trial. Defendant denied being able to discuss

the facts of the case with Sanborn. Defendant denied that either Sanborn or Bukalski explained to him that he would have to serve 85% of his sentence. He said that when he signed the plea paperwork, he did not understand the "85 percent part." He felt he had no choice but to plead that day or "go to trial and get double digits." Bukalski told defendant that he had a better chance of receiving a lower sentence if he pleaded guilty. Defendant agreed that the trial court told him he would have to serve 85% of his sentence on the day of the plea hearing.

¶ 49    Bukalski testified that he represented defendant in the case filed in 2021 for sexual assault and sexual abuse against Z.C. Bukalski testified that he received an offer letter from the State for defendant to plead guilty to count I for an agreed sentence of 10 years in prison, to be served at 85%, and the dismissal of the remaining charge. The letter containing that offer was admitted into evidence with no objection. Bukalski had discussions with defendant about that offer, including the requirement to serve the sentence at 85%. Defendant did not want to accept that offer. Bukalski never discussed with defendant that he could serve his sentence at 50%. Bukalski believed the State's offer came early on in the case and was discussed at that time. Bukalski was out of town on the day defendant's plea was entered.

¶ 50    Defense counsel argued that defendant's guilty plea was involuntary because his attorney did not fully discuss with him the consequences of pleading guilty. The State argued that defendant voluntarily and knowingly entered into the open plea agreement and defendant failed to show ineffective assistance of counsel.

¶ 51    In reaching its decision, the trial court stated:

"I find that Mr. Bukalski's testimony was credible, *** he appeared to be sure in his recollection of the case, and his testimony was that he previously met with his client and gone over the offer letter that was sent out on September 28th,

- 13 -

2021, and that offer letter is now before the Court in State's Exhibit Number 1 clearly outlining the initial offer in this case of 10 years in the Illinois Department of Corrections to be served at 85 percent, dismiss the remaining count. Mr. Bukalski testified that he in essence read that offer to his client including the 85 percent at some time prior to the appearance in court. So the defendant had been made aware of that fact."

¶ 52    The trial court also explained that it went through its admonishments prior to the guilty plea. When the court mentioned 85%, defendant showed a "little bit of a look of confusion on his face" and glanced at his counsel. At that point, the court gave defendant additional time to talk to his attorney in the hallway. When he returned, "defendant indicated the source of his confusion" was the 85%. The court then admonished defendant again, and defendant "clearly understood the 85 percent portion of this, and had benefitted from the advice of counsel in relation to that." The court found defendant's ineffective-assistance claim failed on both prongs because there was no deficient performance or prejudice.

¶ 53    The trial court said that after reviewing the transcript, it believed that defendant was appropriately and properly admonished in relation to everything about which he expressed some concern, was given additional time to speak to his attorney, and came back in ready to move forward and plead guilty in an open plea. The court found defendant

> "was well aware of the 85 percent both from prior discussion with his attorney and contemporary with the signing of the plea, or reviewing that plea after the Court gave him some additional time in the middle of the plea agreement, that the defendant knew exactly what he was signing."

¶ 54    Therefore, the trial court ruled: "The motion to withdraw guilty plea in this case is

going to be denied as the Court finds that it was a freely tendered and voluntary decision and that the defendant has failed to meet either prong of the *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] matter in relation to ineffective assistance."

¶ 55    With respect to the motion to reconsider sentence filed on March 9, 2023, defendant argued that the trial court was mistaken when it found that he violated parole over and over again. He explained that he admitted himself to prison because he did not have a place to live as a sex offender. Defense counsel explained: "It wasn't that he wasn't reporting, or he committed new offenses, they were that he just didn't have a place to go to or he wasn't meeting the qualifications actually, so he had to just recommit himself to being in prison and finish out that time." Counsel argued that it "was a misrepresentation and misinterpretation by the Court that he wasn't actually violating parole at the time." The State argued that the court considered the appropriate mitigating and aggravating factors and provided defendant an appropriate sentence.

¶ 56    In explaining its decision, the trial court stated:

"I recall the sentencing hearing in this case and I since had an opportunity to refresh that recollection by reading the transcript that's been provided to the sentencing hearing. Specifically, when the court thinks back about this sentencing hearing, it wasn't necessarily the parole violations that the Court went through in its summation. While the Court looked at the overall prior record and considered those factors, the parole violations were not a significant portion of why I imposed the sentence I imposed.

The primary reason that this this Court, or one of the—and as I indicated in my summation, I considered all the statutory factors in aggravation and mitigation whether I mention them or not, but what struck me then and to this day about this

- 15 -

defendant was that he had offended on [*sic*] multiple prior young wom[e]n and didn't think there was anything wrong with it. It's a culture thing. It's just what we do. One of them, it's my recollection, becoming pregnant and having his child. That is what stood out to in my mind primarily in this case in addition to all other factors in aggravation and mitigation, that this defendant had zero remorse for his conduct, he blamed the victims, he thought it was their fault that this happened, and I believe based on that he was an extreme, extreme risk to re-offend against other victims in the future, and I still believe that. The motion to reconsider sentence is going to be denied."

¶ 57    This appeal followed.

¶ 58                              II. ANALYSIS

¶ 59                    A. Psychosexual Risk Evaluation

¶ 60    On appeal, defendant first argues that he was denied effective assistance of plea counsel because his counsel provided his psychosexual risk evaluation to the trial court as an exhibit at sentencing.

¶ 61    In Illinois, a PSI must be completed in all felony cases, which sets forth certain information about the defendant. See 730 ILCS 5/5-3-2 (West 2022). When a felony sex offender is being considered for probation, he is required to submit a sex offender evaluation as part of the PSI. 730 ILCS 5/5-3.2(b-5) (West 2022). However, "[i]n cases in which the offender is being considered for any mandatory prison sentence, the investigation shall *not* include a sex offender evaluation." (Emphasis added.) 730 ILCS 5/5-3.2(b-5) (West 2022).

¶ 62    First, we note that defendant's ineffective-assistance claim was forfeited because it was not included in his motion to reconsider his sentence. Defendant concedes this but argues that

his postplea counsel also provided ineffective assistance by failing to include the issue in the amended motion to reduce sentence. "[T]he failure to preserve a meritorious sentencing issue for appeal may constitute ineffective assistance of counsel, *i.e.*, unreasonable conduct by counsel that prejudiced the defendant." *People v. D'Alise*, 2022 IL App (2d) 210541, ¶ 23. However, if the underlying claim of ineffective assistance of trial counsel would not have succeeded, there is no arguable basis for a claim that appellate counsel was ineffective. *People v. McDonald*, 2021 IL App (1st) 190687, ¶ 41.

¶ 63    The United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. The guarantee of effective assistance applies at all critical stages of criminal proceedings, including sentencing. *People v. Williams*, 358 Ill. App. 3d 1098, 1104 (2005). When reviewing a claim of ineffective assistance of counsel, this court applies the two-part framework established in *Strickland*. To prevail, a defendant must demonstrate deficiency and prejudice. *People v. Bradford*, 2019 IL App (4th) 170148, ¶ 14.

¶ 64    To establish deficient performance, the defendant must show trial counsel's performance fell below an objective standard of reasonableness. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 88. The reviewing court strongly presumes counsel's decisions were the result of sound trial strategy. *Strickland*, 466 U.S. at 689.

¶ 65    To establish prejudice in the sentencing context, the defendant must show a reasonable probability that counsel's deficient performance affected the outcome, meaning "that the trial judge would have imposed a lesser sentence if his counsel had not erred." See *People v. Billups*, 2016 IL App (1st) 134006, ¶ 16. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. A failure to establish either

deficiency or prejudice will be fatal to the ineffective-assistance claim. *Hibbler*, 2019 IL App (4th) 160897, ¶ 88. We review *de novo* a claim of ineffective assistance of counsel raised for the first time on appeal. *Hibbler*, 2019 IL App (4th) 160897, ¶ 88.

¶ 66　　　　　It is a matter of trial strategy for trial counsel to request a preplea sex offender evaluation to assist in plea negotiations. *People v. Rebecca*, 2012 IL App (2d) 091259, ¶ 108. It may also be a matter of trial strategy to introduce the evaluation at sentencing. See *Rebecca*, 2012 IL App (2d) 091259, ¶ 108. Allowing the admission of a sex offender evaluation at a sentencing hearing is objectively unreasonable and constitutes deficient performance if (1) the defendant is subject to a prison sentence, rather than probation, and (2) the evaluation contains no mitigating information. *People v. Wooden*, 2025 IL App (4th) 240874-U, ¶ 35; *People v. Walker*, 2024 IL App (4th) 230247-U, ¶ 33.

¶ 67　　　　　However, even if it were objectively unreasonable for defense counsel to tender a sex offender evaluation during sentencing, the defendant still must prove that he was prejudiced by its admission. See *Wooden*, 2025 IL App (4th) 240874-U, ¶ 38; *Walker*, 2024 IL App (4th) 230247-U, ¶ 35; *Rebecca*, 2012 IL App (2d) 091259, ¶ 109. A defendant is prejudiced by the admission of a sex offender evaluation only if (1) the evidence contained within it was not available from other sources provided at the sentencing hearing and (2) the evaluation was extensively relied on by the trial court to increase the defendant's sentence. See *Walker*, 2024 IL App (4th) 230247-U, ¶¶ 33-35; *Wooden*, 2025 IL App (4th) 240874-U, ¶ 38; *Rebecca*, 2012 IL App (2d) 091259, ¶ 109. There is no prejudice to the defendant where the record shows the evaluation did not influence the court's decision. *Wooden*, 2025 IL App (4th) 240874-U, ¶ 38.

¶ 68　　　　　Here, defense counsel's decision to introduce the psychosexual risk evaluation was a matter of trial strategy. See *Rebecca*, 2012 IL App (2d) 091259, ¶ 108; see also *People v. Ward*,

187 Ill. 2d 249, 261-62 (1999) (stating that what evidence to produce at sentencing is a strategic decision and generally immune from claims of ineffective assistance). While the evaluation did contain some negative information about defendant, the evaluation also contained positive information about defendant and his family, including him being a stay-at-home father and husband, having a good relationship with his parents, and caring for his father, who had cancer. In fact, defense counsel specifically referred to the evaluation's recommendation that defendant receive counseling while in prison and used that recommendation to argue that defendant should receive the minimum prison sentence, undergo sex offender treatment, and return to the community as soon as possible.

¶ 69 Furthermore, much of the information contained in the evaluation was provided elsewhere during the sentencing hearing, particularly in the PSI. In fact, the trial court specifically stated that "the [PSI] confirms what's in the sexual offender evaluation." In sentencing defendant, the court relied primarily on defendant's prior criminal history, which was contained in the PSI. The court also relied on defendant's failure to take responsibility, which it determined based on defendant's attitude in court, including his statement in allocution, where he blamed his criminal conduct on being drunk. Because the court did not need the sex offender evaluation to learn about this negative information, it was not objectively unreasonable for counsel to provide the evaluation to the court, particularly where it contained mitigating evidence about defendant being a stay-at-home father and having a good relationship with his wife, children, and parents.

¶ 70 Moreover, even if it was objectively unreasonable for defense counsel to introduce the report into evidence, defendant suffered no prejudice. While the trial court mentioned the evaluation during sentencing, the court did not heavily rely on the assessment. Instead, the court relied in large part on defendant's prior criminal history, which was contained in the PSI. The court

also relied on defendant's lack of remorse and victim blaming, which were clear throughout the proceedings. In discussing the nature of defendant's crimes, the court mentioned that defendant impregnated one of his teenage victims. That information came from the PSI. Thus, even without the assessment, the information in the PSI would have given the court sufficient information to impose the same sentence. Thus, defendant was not prejudiced by introduction of the evaluation. See *Walker*, 2024 IL App (4th) 230247-U, ¶ 35; see also *Rebecca*, 2012 IL App (2d) 091259, ¶ 109.

¶ 71        Here, where defendant's underlying claim of ineffective assistance by trial counsel would not have succeeded, there is no arguable basis for defendant's claim that appellate counsel was ineffective. *McDonald*, 2021 IL App (1st) 190687, ¶ 41. Because defendant failed to prove either prong of his ineffective-assistance claim related to the introduction of the psychosexual risk evaluation, his appellate counsel was not ineffective, and he is not entitled to a new sentencing hearing.

¶ 72                                B. Parole Violations

¶ 73        Defendant next contends that the trial court erred in sentencing him because it incorrectly believed he had repeated parole violations.

¶ 74        Here, the evidence showed that when defendant was convicted of two of his sexual offenses in 2007, he kept leaving prison and returning frequently. In sentencing defendant, the trial court noted that defendant was not abiding by his parole in doing so. The court stated: "On parole he was returned for a violation, paroled again, returned, paroled, returned, paroled, returned, and then ultimately discharged, showing that while he is out on parole, he was unable to conform his conduct to the requirements of the law."

¶ 75        However, at the hearing on July 28, 2025, defense counsel explained that the trial

- 20 -

court misinterpreted why defendant kept returning to prison. According to defense counsel, defendant was doing so to complete his sentences on his various charges and so he would have a place to stay, not because he was violating his parole. The court considered that explanation at the July 28, 2025, hearing and stated that while the parole violations were one factor the court considered in its sentence, "the parole violations were not a significant portion of why [it] imposed the sentence [it] imposed." Instead, the court was most troubled by the fact that "this defendant had zero remorse for his conduct, he blamed the victims, he thought it was their fault that this happened, and [it] believe[s] based on that he was an extreme, extreme risk to re-offend against other victims in the future, and [it] still believe[s] that." Thus, the court did not reduce defendant's sentence.

¶ 76       While defendant contends that we do not know how much the trial court relied on the parole issue in sentencing defendant, the record rebuts this contention. The court clearly explained that that the new information related to the parole violations had no effect on defendant's sentence. Instead, the court stated that in issuing its sentence, it was more concerned with defendant's lack of remorse. We must take the court at its word in explaining the basis of its sentencing decision, as the court has an obligation to follow the law in issuing its decisions. See *People v. Phillips*, 392 Ill. App. 3d 243, 265 (2009) (stating that a trial court is presumed to know the law and apply it properly). We have no reason to question the court's explanation that it did not significantly rely on defendant's repeated returns to prison when it imposed defendant's sentence. The court's assertion is supported by its own statements elsewhere in the record because the court never stated that it only or primarily considered defendant's parole violations in sentencing defendant. Rather, at the hearing on the initial motion to reconsider sentence, the court stated:

"[I]t's a very serious charge, although the Court unfortunately sees similar charges basically on a daily basis in this courtroom, but it is a very serious charge. The defendant had an extremely serious prior criminal record, he had been to the Department of Corrections multiple times. When released on parole he was returned as a violator multiple times on all if not most of his sentences. He had multiple prior sexual-related offenses in his past involving young girls. He minimized his culpability in each of those offenses. The Court considered all of these factors and laid them out at the time of the sentencing hearing."

This explanation of the court's decision shows that while the court mentioned defendant's parole violations once in sentencing defendant, the court was much more concerned about other factors, such as the seriousness of defendant's crime, defendant's criminal history, and his minimization of his culpability. Thus, the record shows that defendant's sentence would not have been different had the court understood at the sentencing hearing the reasons why defendant repeatedly returned to prison after being paroled.

¶ 77 Further, defendant admits that this issue was forfeited but argues that postplea counsel was ineffective for failing to raise it on appeal. However, as explained above, defendant cannot establish prejudice because the trial court specifically stated that it would not have changed defendant's sentence even if it had been properly informed about the parole issue. See *Wooden*, 2025 IL App (4th) 240874-U, ¶ 38 (finding no prejudice where admission of improper evidence did not influence the court's sentencing decision). Because defendant's underlying claim of ineffective assistance of counsel failed, so did defendant's claim of ineffective assistance of appellate counsel. See *McDonald*, 2021 IL App (1st) 190687, ¶ 41.

¶ 78 C. Rule 604(d) Certificate

¶ 79　　　　Finally, defendant argues that postplea counsel failed to strictly comply with Rule 604(d) by not including affidavits and outside-the-record evidence with her amended motion to withdraw defendant's guilty plea.

¶ 80　　　　"Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7. The purpose of the rule

> "is to ensure that before a criminal appeal can be taken from a guilty plea, the trial judge who accepted the plea and imposed sentence be given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and *dehors* the record, but nevertheless were unwittingly given sanction in the courtroom." *People v. Wilk*, 124 Ill. 2d 93, 104 (1988).

Moreover, the rule "enables the trial court to insure [*sic*] that counsel has reviewed the defendant's claim and considered all relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence." *People v. Shirley*, 181 Ill. 2d 359, 361 (1998).

¶ 81　　　　Rule 604(d) provides:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 82 Importantly, "a facially valid certificate may be rebutted by the record." *People v. Williams*, 2025 IL App (4th) 240738, ¶ 48. "If the record demonstrates counsel failed to comply with his or her obligations under Rule 604(d), a remand may be required." *Williams*, 2025 IL App (4th) 240738, ¶ 48. Whether counsel complied with Rule 604(d) is a question we review *de novo*. *Williams*, 2025 IL App (4th) 240738, ¶ 48.

¶ 83 Here, although postplea counsel filed a facially valid Rule 604(d) certificate, defendant argues that counsel failed to comply with Rule 604(d) by (1) not alleging or providing facts to show that he was prejudiced by plea counsel's failure to properly advise him about pleading guilty, (2) not amending the motion to reconsider sentence to include arguments about defendant's parole issue, and (3) not alleging that counsel was ineffective for including the sex offender evaluation at sentencing. We reject defendant's arguments.

¶ 84 "Meritless legal claims are not 'necessary' amendments for purposes of Rule 604(d)." *People v. Black*, 2022 IL App (4th) 210282-U, ¶ 34; see Ill. S. Ct. R. 604(d) (Apr. 15, 2024); see also *People v. Williams*, 2021 IL App (3d) 190298, ¶ 26 (counsel has no duty to raise a meritless issue). Rule 604(d) requires counsel to make any amendments to the motion "necessary" for adequate presentation of any "defects" in guilty plea and sentencing proceedings. Ill. S. Ct. R. 604(d) (Apr. 15, 2024). However, when a defendant raises issues in postplea proceedings that lack merit, the record does not rebut counsel's assertion in her Rule 604(d) certificate that she made all amendments necessary for an adequate presentation of any defects in the plea and sentencing proceeding. *People v. Chase*, 2025 IL App (4th) 230407-U, ¶ 81.

¶ 85 Turning to the first issue, defendant contends that his counsel should have provided an affidavit or other evidence that he was prejudiced by his unknowing and involuntary guilty plea. However, as the trial court found at the hearing on defendant's motion to withdraw his guilty plea,

defendant's plea was knowing and voluntary. Therefore, there would be no evidence outside the motion to establish that defendant was prejudiced. Additionally, the trial court rejected the first prong of defendant's ineffective-assistance claim—deficient performance—so there was no need for defense counsel to provide evidence related to the second prong—prejudice. Because defendant's ineffective-assistance claim was meritless, there was no additional evidence to provide to support it and no violation of Rule 604(d).

¶ 86 The same is true for defendant's remaining claims. As explained above, there were no "defects" in the guilty plea proceeding. Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). Postplea counsel had no responsibility to amend her motion to include the parole issue because that argument lacked merit. As the trial court explained, its sentence did not change once it knew about the parole issue. Therefore, including that issue in a Rule 604(d) motion would have been meritless.

¶ 87 Similarly, there was no reason for counsel to include an argument related to the sex offender evaluation in an amended motion to reduce sentence. Because counsel's introduction of that evaluation did not amount to ineffective assistance, there would be no reason for postplea counsel to include that meritless argument in an amended motion.

¶ 88 Because defendant's issues lacked merit, postplea counsel was not required to raise them. Thus, counsel did not file a deficient Rule 604(d) certificate, and defendant is not entitled to a new sentencing hearing.

¶ 89 III. CONCLUSION

¶ 90 For the reasons stated, we affirm the trial court's judgment.

¶ 91 Affirmed.